530 A.2d 103

Rebecca NEAL, a minor, By her parents and natural guardi-
ans, David C. NEAL and Carol W. Neal; David C. Neal
and Carol W. Neal, in their own rights, Appellants,

v.

Milton LU, M.D., and Milton Lu, D.D.S., M.S.,
F.A.C.S., Ltd., Appellee.

Superior Court of Pennsylvania.

Argued Jan. 26, 1987.

Filed Aug. 13, 1987.

466

Theodore A. Schwartz, Philadelphia, for appellants.

Peter J. Curry, Harrisburg, for appellee.

Before CAVANAUGH, OLSZEWSKI and MONTEMURO, JJ.

MONTEMURO, Judge:

Appellants in this medical malpractice action challenge the denial of their motions for a new trial and for judgment n.o.v. In the absence of any error that would justify a retrial, and because the evidence of record adequately supports the jury's verdict, we affirm the judgment of the Lancaster County Court of Common Pleas in favor of appellee Milton Lu, M.D.

Appellants allege in their complaint that Dr. Lu performed surgery on appellant Rebecca Neal negligently and without the informed consent of either Rebecca or her parents, appellants David and Carol Neal. The testimony and other evidence at trial revealed the following facts. In July of 1969, Rebecca, who was then three years old, amputated the tip of the ring finger on her right hand while playing on a swing in her back yard. She was treated at a nearby hospital by John W. Pratt, M.D., and was released apparently without further incident. In the years following this mishap, however, the finger developed a bulbous deformity on either side of the nail, and the nail itself curved at an odd angle over the end of the finger. The deformity embarrassed Rebecca and impeded her pursuit of musical and athletic activities at school. Rebecca and her mother therefore consulted Dr. Lu in January of 1981 about the possibility of corrective surgery. Dr. Lu advised the Neals that surgery could eliminate the bulbous deformity and straighten the nail. The Neals sought the "second opinion" of at least one other physician, who advised against a surgical solution to Rebecca's problem. Neither Rebecca nor her mother could recall the reasons for this advice. The Neals nevertheless decided that Rebecca would undergo the proposed surgery, and Dr. Lu operated on March 6, 1981.

The surgery, according to appellants, has worsened rather than corrected the condition of Rebecca's finger. Appellants offered evidence that the finger is shorter now than it was before surgery and that Rebecca has lost completely the use of the joint closest to the fingertip. In support of the negligence claim, the evidence offered by appellants

suggests that Dr. Lu removed or "trimmed" bone from Rebecca's finger unnecessarily. Appellants' medical expert, moreover, testified that the "ill-conceived" failure to employ a skin graft in this case caused the death or "necrosis" of additional bone and tissue in the afflicted digit. In support of the informed consent claim, the parties agree that Dr. Lu decided during surgery to insert a "pin" into Rebecca's finger to ensure the straightness of the nail even though the doctor had informed neither Rebecca nor her parents of the possibility that he would have to do so. The parties also agree that Dr. Lu never informed the Neals of the possibility that he would "trim" bone from the finger.

Dr. Lu testified on his own behalf as the sole witness for the defense. He indicated that during surgery he had removed tissue and other matter from the affected area as planned. He repeatedly denied, however, that he had "trimmed" any bone other than the nail. The doctor also testified that although he had noticed some necrosis of the skin in the weeks following surgery, he never noticed any necrosis of the bone. He suggested that the surgery only appeared to shorten Rebecca's finger. In response to the testimony of appellants' medical expert, Dr. Lu offered his own "opinion" that the "traumatic amputation" of Rebecca's finger in 1969 was "clearly" a "possible" cause of the condition about which appellants now complain. The doctor further opined that if the 1969 accident itself did not sever bone from the fingertip, the treating physician at the time, Dr. Pratt, could not possibly have closed the wound without removing or trimming some portion of the bone itself. Counsel for appellants objected to this portion of Dr. Lu's testimony on two grounds. First, counsel maintained that Dr. Lu was attempting to testify as a medical expert even though he had neither listed himself as a prospective expert witness nor furnished appellants with a synopsis of his proposed testimony pursuant to general and local rules of discovery. Second, counsel observed that Dr. Lu had failed to render his opinion to "a reasonable medical certainty." The trial court nevertheless overruled these objections and allowed the testimony.

On February 22, 1985, the jury returned a verdict in favor of Dr. Lu. Appellants filed timely motions for post-trial relief, which the court denied. This appeal followed. Appellants now present three issues for our consideration:

I. Whether the trial court erred when it allowed the defendant physician in a medical malpractice case to render an expert opinion even though the defendant failed to list himself as a prospective expert witness and failed to furnish a synopsis of his proposed expert testimony as required by Pa.R.C.P. 4003.5 and Lancaster County Local Rule 212.

II. Whether the trial court erred when it allowed the defendant physician in a medical malpractice case to render an expert opinion on the issue of causation with less than "a reasonable medical certainty."

III. Whether the evidence on the issue of informed consent was so conclusive that it entitles appellants to judgment n.o.v.

We will address each of these questions in turn.

## I.

In support of their request for a new trial, appellants point out that Dr. Lu failed during discovery to list himself as one of the experts the defense expected to call at trial. Appellants also point out that the doctor failed to disclose "the substance of the facts and opinions" about which he expected to testify. For these reasons, appellants contend that the trial court should have excluded Dr. Lu's "surprise" expert testimony. Their argument relies primarily upon Pa.R.C.P. 4003.5(a), which provides in relevant part as follows:

(a) Discovery of facts known and opinions held by an expert, otherwise discoverable under the provisions of Rule 4003.1 and acquired or developed in anticipation of litigation or for trial may be obtained as follows:

(1) A party may through interrogatories require

(a) any other party to identify each person whom the other party expects to call as an expert witness at trial and to state the subject matter on which the expert is expected to testify and

(b) the other party to have each expert so identified by him state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. The party answering the interrogatories may file as his answer a report of the expert or have the interrogatories answered by his expert. The answer or separate report shall be signed by the expert.

We recognize that appellants served the necessary interrogatories upon Dr. Lu and that rule 4003.5 therefore required Dr. Lu to disclose before trial the substance of any expert testimony "acquired or developed in anticipation of litigation." We further recognize that if a party fails to identify as requested any of those experts which he or she expects to call at trial, the court must exclude the testimony of the undisclosed experts, absent some extenuating circumstance. *See* Pa.R.C.P. 4003.5(b); *Kaminski v. Employers Mut. Cas. Co.,* 338 Pa.Super. 400, 487 A.2d 1340 (1985). Appellants nevertheless misapply the requirements of Rule 4003.5 to the testimony of Dr. Lu.

By its own terms, Rule 4003.5 allows limited discovery of expert opinions "acquired or developed in anticipation of litigation." As this language suggests, the rule governs discovery of opinions that a party or a potential party to litigation solicits from a *non* party expert. The explanatory note to the Rule, moreover, emphasizes that

Rule 4003.5 is not applicable to discovery and deposition procedure where a defendant is himself an expert, such as a physician, architect or other professional person, and the alleged improper exercise of his professional skills is involved in the action. Such a defendant can be examined by written interrogatories under Rule 4005 or by oral deposition under Rule 4007.1.

Pa.R.C.P. 4003.5 explanatory note—1978.[1] *See also* 10 Goodrich-Amram 2d § 4003.5:2 (1979). As the Civil Procedural Rules Committee here suggests, the litigant can probe the expert knowledge and opinions of his or her opponent before trial by more direct and comprehensive means than those which are afforded by Rule 4003.5. The ability to discover the potential expert testimony of a party witness, either by propounding written interrogatories or by taking oral or written depositions, is fettered only by the general limitations that apply to all discovery. Since the rescission of Rule 4011(f) in 1978, the party witness against whom discovery is sought can no longer object on the ground that the requested disclosure would require him or her "to give an opinion as an expert witness."[2] Appellants in the present case took full advantage of the opportunity to learn before trial the expert opinions of Dr. Lu. They examined the doctor both by interrogatories and by deposition. If the doctor's opinion at trial varied significantly from his opinion under oath during deposition, counsel for appellants could have called the discrepancy to the attention of the jury. In fact, counsel relied heavily upon the deposition transcript during his cross examination of Dr. Lu at trial. Rule 4003.5 did not afford appellants the right to vex their party opponent with cumulative discovery demands merely because the opponent expected to testify as an expert in defense of the very conduct at issue.

1. Although the explanatory notes are not part of the rules themselves, and therefore do not bind our interpretation, they serve as guidelines for understanding the purpose of our supreme court in adopting the particular rule in question. *See Laudenberger v. Port Auth. of Allegheny Cty,* 496 Pa. 52, 436 A.2d 147 (1981); *Klyman v. Southeastern Pennsylvania Trans. Auth.,* 331 Pa.Super. 172, 480 A.2d 299 (1984).

2. Rule 4011(f) provided that "[n]o discovery or inspection shall be permitted which ... would required a deponent, whether or not a party, to give an opinion as an expert witness, over his objection." Pa.R.C.P. 4011(f) (rescinded November 20, 1978), *quoted in* 5A R. Anderson, Pennsylvania Civil Practice 2 (1966). Despite the rescission of subdivision (f), the Rule continues to place general limits on the scope of discovery. For example, a party cannot make discovery demands that "would cause unreasonable annoyance, embarrassment, oppression, burden or expense to the deponent or any person or party." Pa.R.C.P. 4011(b). Rule 4003.1 to 4003.4 impose other general limits on discovery.

■ Like its almost identical federal counterpart, Fed.R. Civ.P. 26(b)(4), Rule 4003.5 applies only to discovery of experts that a litigant has "retained or specially employed" in the course of preparing for litigation. Pa.R.C.P. 4003.5 explanatory note—1978.[3] The Rule limits, rather than expands, the relatively free flow of pre-trial information. By allowing discovery of only those experts that an opponent "expects to call" at trial and by restricting this discovery to a synopsis of the proposed expert testimony, it discourages the lazy litigant from building his or her case upon the better preparation of a more diligent opponent. It permits only enough discovery to prevent the tactical use of surprise expert testimony at trial. The opinions of Dr. Lu in this case certainly were not the kind of trial preparation material to which Rule 4003.5 applies. The doctor did not "acquire" his opinions on the treatment of Rebecca's finger "in anticipation of litigation." He did not expend time and money developing his own knowledge or employing himself as an expert to gain a tactical advantage in the law suit brought against him by appellants. His opinions and knowledge, in short, were not the work product of a well-prepared litigant. They pre-dated any litigation and are the very gist of appellants' cause of action. As such, they fall

---

**3.** The language of Rule 4003.5 "closely parallels" that of Fed.R.Civ.P. 26(b)(4). Pa.R.C.P. 4003.5 explanatory note—1978. In the note that precedes the 1978 amendments to the rules of deposition and discovery, the Civil Procedural Rules Committee indicated that the new rules would bring "the Pennsylvania system into as close conformity as possible with the federal system." The Advisory Committee note on Federal Rule 26 provides some insight into the purpose of Subdivision (b)(4):

This is a new provision dealing with the discovery of information (including facts and opinions) obtained by a party from an expert retained by that party in relation to litigation or obtained by the expert and not yet transmitted to the party.... It should be noted that *the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness.*

Fed.R.Civ.P. 26, notes of Advisory Committee on 1970 amendments (emphasis added). Thus, the Federal Rule allows limited discovery of facts and opinions that are not otherwise discoverable.

outside any reasonable definition of the phrase "acquired or developed in anticipation of litigation." Dr. Lu therefore could not have taken advantage of Rule 4003.5 to limit discovery of his opinions to a mere synopsis of his proposed testimony. If Dr. Lu could not have invoked the *protection* of Rule 4003.5 to avoid full discovery of his expert knowledge, appellants certainly cannot invoke the *sanctions* of Rule 4003.5 to punish the doctor for noncompliance. The Rule simply does not apply to expert opinions of a party when a matter within that party's field of expertise is at issue. This interpretation is consistent with discovery practice under the federal rule. *See, e.g., Rodrigues v. Hrinda,* 56 F.R.D. 11 (W.D.Pa.1972) (expert opinion of defendant physicians in medical malpractice action not "acquired or developed in anticipation of litigation").

■ Appellants also argue, however, that Dr. Lu failed to comply with Lancaster County Local Rule 212. This rule governs the conduct of pretrial conferences in Lancaster County. One of the numerous requirements of the Rule is that counsel before conference furnish both the court and opposing counsel with a list of "witnesses on liability and on damages, showing the address of each." Counsel must also furnish "a concise statement of each witness' proposed testimony." The Rule limits the evidence at trial "to those witnesses, exhibits and documents set forth in [the] pre-trial memorandum." The record in this case nowhere indicates that Dr. Lu furnished the required lists and concise statements.[4] Appellants therefore urge that the trial court should have excluded the expert testimony of Dr. Lu and that the court's failure to do so entitles appellants to a new trial. We disagree.

Appellant recognizes that noncompliance with the literal requirements of a local rule of discovery will not by itself justify exclusion of testimony. We observed in *Sindler v. Goldman,* 309 Pa.Super. 7, 454 A.2d 1054 (1982), that a trial

---

**4.** Records transmitted to this court often lack this sort of pre-trial conference material. In this case, however, Dr. Lu appears to agree that he never listed himself as a witness or provided a concise statement of his proposed testimony as required by Local Rule 212.

court should not enforce a local "procedural technicality" by excluding evidence unless failure to do so would deprive a party of their right to a fair trial. In *Sindler*, the defendant physician in a medical malpractice action failed to comply with a local rule that required him to serve upon his opponents "the reports of any expert whose opinion will be offered in evidence at the time of trial." *Sindler, supra,* 309 Pa.Superior Ct. at 12, 454 A.2d at 1056. At his deposition, moreover, the defendant refused to answer questions that required him to render an expert opinion.[5] The trial court nevertheless allowed the defendant during his trial testimony to offer the same expert opinions that the plaintiff had tried unsuccessfully to discover. Because the defendant physician had failed to disclose his proposed expert testimony pursuant to the local rule and had refused to allow the plaintiff to depose him on his expert opinions, the plaintiff in *Sindler*, like appellants in the present case, claimed that the defendant's expert testimony constituted unfair surprise. We agreed and therefore affirmed the grant of a new trial by the trial court.

■ The present case, however, differs from *Sindler*. Here, as we have noted, appellants had ample opportunity before trial to explore the expert opinions of Dr. Lu. Appellants obtained more information from the depositions of their opponent than they would have from a mere summary of his testimony. We therefore cannot find that the doctor's expert testimony deprived appellants of a fair trial. In *Sindler*, we identified four factors that the court should weigh in determining whether failure to comply with a local rule of discovery justifies exclusion of expert testimony: (1) the extent of any actual "prejudice or surprise" suffered by the party against whom the expert testified; (2) the ability of that party to cure the prejudice or surprise; (3) the extent to which allowance of the testimony disrupted the "orderly and efficient trial of the case or of other cases in

5. The depositions in *Sindler* occurred before the repeal of Pa.R.C.P. 4011(f). As we have indicated, Rule 4011(f) enabled any deponent, party or non-party, to withhold his or her answer to a question that asked for an expert opinion.

the court"; and (4) the "bad faith or willfulness" of the party that has failed to comply with the order. *Sindler, supra,* 309 Pa.Superior Ct. at 15 n. 8, 454 A.2d at 1058 n. 8. *See also Gill v. McGraw Electric Co.,* 264 Pa.Super. 368, 399 A.2d 1095 (1979) (applying same factors to determine whether failure to comply with pretrial discovery order justified exclusion of expert testimony). These factors weigh heavily in favor of allowing Dr. Lu's testimony. Appellants cannot claim actual prejudice or surprise. They learned as much from Dr. Lu's deposition and from his answers to interrogatories as they would have learned from the "concise statement" required by Rule 212. Moreover, even if the expert testimony at trial differed from the expert testimony during deposition, appellants could easily cure any resultant prejudice or surprise by offering the inconsistent deposition testimony into evidence against the doctor or by exploring the inconsistency on cross examination. Finally, nothing in the record indicates that allowance of Dr. Lu's testimony caused any disruption of the trial or that Dr. Lu acted willfully or with bad faith in failing to comply with Rule 212.

## II.

Appellants also point out, in support of their request for a new trial, that Dr. Lu rendered his expert opinion on causation with less than "a reasonable medical certainty." During his direct examination of Dr. Lu, counsel explored the possibility that the 1969 accident was the actual cause of Rebecca's current problems. Counsel for appellants objected to the following exchange:

Q. Doctor, in a traumatic amputation such as Rebecca sustained in July of 1969, *is it possible* that the individual could sustain a damage to—I believe [plaintiff's expert] referred to it as the growth plate—in the finger?

A. It is *clearly possible* because all the finger you have. All the bone have a growth center, so when the child

> grow, the long bone, short bone, all grow. If you damage the center, the bone will not grow.

N.T. February 22, 1985 at 505 (emphasis added). Appellants contend that this testimony about the "possible" other causes of Rebecca's problems fell short of the evidentiary standard for expert opinion evidence on the issue of causation. They believe that the trial court should have "taken steps to assure that Dr. Lu testified within the realm of certainty." We disagree.

■ Appellants cite *McMahon v. Young*, 442 Pa. 484, 276 A.2d 534 (1971), for the firmly-established proposition that expert medical witnesses must render their opinions on causation with "reasonable medical certainty." The opinion of our supreme court in *McMahon* makes clear, however, that the burden of proving causation with the appropriate certainty rests upon the *plaintiff*. Obviously, recovery in a civil action depends at least initially on the sufficiency of the proof offered by the party who seeks to recover. The defendant ordinarily need not prove, with certainty or otherwise, that he or she is innocent of the alleged wrongdoing. Absent an affirmative defense or a counterclaim, the defendant's case is usually nothing more than an attempt to rebut or discredit the plaintiff's case. Evidence that rebuts or discredits is not necessarily proof. It simply vitiates the effect of opposing evidence. Expert opinion evidence, such as that offered by Dr. Lu in this case, certainly affords an effective means of rebutting contrary expert opinion evidence, even if the expert rebuttal would not qualify as proof. In general, "the admission or rejection of rebuttal evidence is within the sound discretion of the trial judge." *Mapp v. Dube*, 330 Pa.Super. 284, 294, 479 A.2d 553, 557 (1984).

■ We concluded in *Erkens v. Tredennick*, 353 Pa.Super. 236, 509 A.2d 424 (1986), that the trial court had acted within its discretion in permitting the defendant physician's medical expert to testify on the issue of causation with less than reasonable medical certainty. The plaintiff's expert in *Erkens* had testified with appropriate certainty that the

defendant had caused the plaintiff's infection when he negligently removed sutures from the plaintiff's eye. The defendant's expert countered that the infection "did not result from the suture removal but could have been carried by the bloodstream." *Erkens, supra*, 353 Pa.Superior Ct. at 240, 509 A.2d at 426. We held that although the defendant's rebuttal expert "did not state with reasonable medical certainty what did cause the infection, ... his testimony was quite clear as to his basis for finding the suture removal did not cause it." *Id.* The present case begs the same result. Although Dr. Lu testified, in response to appellant's expert, that the 1969 accident was a "possible" cause of Rebecca's current problems, he was "quite clear" in explaining that he had neither removed bone during surgery nor caused any subsequent necrosis of bone. Moreover, the report of the hospital pathologist, who examined the matter removed from Rebecca's finger by Dr. Lu, confirms Dr. Lu's claim that he did not remove bone during surgery. Thus, as we concluded in *Erkens v. Tredennick*, we conclude in this case that the trial court did not abuse its discretion by permitting the challenged testimony of Dr. Lu.

Appellants nevertheless urge that *Erkens* was "ill-considered" and that we should not allow it to stand as "the law of the Commonwealth on this subject." Appellants suggest that the holding in *Erkens* conflicts with the mandate of our supreme court in *McMahon v. Young, supra*. Because the "certainty" standard of *McMahon* applies only to expert medical testimony that a litigant offers as proof of a necessary fact in support of recovery, we cannot agree that *Erkens* and *McMahon* are incompatible. We lack any other reason at this time to question the wisdom of the *Erkens* holding.

### III.

On their informed consent claim, appellants contend that the evidence entitles them to judgment n.o.v. Dr. Lu, they point out, admitted on cross examination that he never explained to Rebecca or to Rebecca's parents the possibility

that the surgery would require the "trimming" of bone or the insertion of a "pin." Both Rebecca and her mother insisted that they would not have consented to the surgery had they known of the possible consequences. Appellants believe that this evidence conclusively establishes the liability of Dr. Lu on the informed consent claim. Again, we cannot agree with appellants' view of this case.

The entry of judgment notwithstanding a jury verdict to the contrary is a drastic remedy. A court cannot lightly ignore the findings of a duly-selected jury. Thus, in considering a motion for judgment n.o.v., the court must view the evidence and all reasonable inference that arise from the evidence in a light most favorable to the verdict winner. *See Handfinger v. Philadelphia Gas Works*, 439 Pa. 130, 266 A.2d 769 (1970); *Northwest Savings Ass'n. v. Distler*, 354 Pa.Super. 187, 511 A.2d 824 (1986); *Tonkovic v. State Farm Mut. Automobile Ins. Co.*, 337 Pa.Super. 123, 486 A.2d 512 (1984). The court can enter judgment n.o.v. only if "no two reasonable persons could fail to agree that the verdict is improper." *Northwest Savings Ass'n. v. Distler*, *supra*, 354 Pa.Super. at 191, 511 A.2d at 825. *See also Olson v. Dietz*, 347 Pa.Super. 1, 500 A.2d 125 (1985). With this standard in mind, we find that the trial court properly denied judgment n.o.v. in this case.

 In Pennsylvania, a physician is liable to his or her patient if (1) the physician fails to disclose any risk in the recommended treatment, or the existence of any alternative method of treatment, that a reasonable person would deem material in deciding whether to undergo the recommended treatment; (2) the patient would have forgone the recommended treatment had he or she known of the undisclosed information; and (3) as a result of the recommended treatment, the patient actually suffers an injury the risk of which was undisclosed, or the patient actually suffers an injury that would not have occurred had the patient opted for one of the undisclosed methods of treatment. *See Jozsa v. Hottenstein*, 364 Pa.Super. 469, 528 A.2d 606 (1987); *Festa v. Greenberg*, 354 Pa.Super. 346, 511 A.2d 1371

(1986); *De Fulvio v. Holst*, 272 Pa.Super. 221, 414 A.2d 1087 (1979); *Sauro v. Shea*, 257 Pa.Super. 87, 390 A.2d 259 (1978); *Jeffries v. McCague*, 242 Pa.Super. 76, 363 A.2d 1167 (1976); *Cooper v. Roberts*, 220 Pa.Super. 260, 286 A.2d 647 (1971).[6] Viewing the evidence in a light most favorable to Dr. Lu, we find that appellants have not established conclusively the necessary elements of their case. We therefore will not disturb the jury's verdict.

Even a quick review of the record reveals several weaknesses in the case against Dr. Lu. First, although Dr. Lu never discussed with the Neals the possibility that he would "trim" bone from Rebecca's finger, the evidence does not establish conclusively that Dr. Lu actually did "trim" bone. As we have indicated, Dr. Lu maintained consistently during his testimony that he never removed bone from the finger. The report of the hospital pathologist confirms this testimony. Second, although Dr. Lu never discussed the possibility that he would insert a "pin" into the finger, none of the evidence establishes, with the appropriate medical certainty, a causal connection between the insertion of the "pin" and the injuries for which appellants seek to recover. The only testimony on this issue came from Rebecca and her mother, both of whom indicated simply that Rebecca felt less pain after Dr. Lu removed the pin. Third, Rebecca and her mother both testified that they had sought a "second opinion" after their initial meeting with Dr. Lu and that the second physician had advised against the proposed surgery. Neither Rebecca nor her mother, however, could

6. *See also* Health Care Services Malpractice Act of Oct. 15, 1975, P.L. 390, No. 111, 40 P.S. § 1301.101 *et seq.* Section 103 of the Act provides, in part, as follows:

'Informed consent' means for the purposes of this act and of any proceedings arising under the provision of this act, the consent of a patient to the performance of health care services by a physician or podiatrist: Provided, That prior to the consent having been given, the physician or podiatrist has informed the patient of the nature of the proposed procedure or treatment and of those risks and alternatives to treatment or diagnosis that a reasonable patient would consider material to the decision whether or not to undergo treatment or diagnosis.

40 P.S. § 1301.103.

recall why the second physician so advised them. The jury reasonably could have inferred from this testimony that the second physician explained all of the risks of the procedure proposed by Dr. Lu, including the risk of bone loss and the possible use of the "pin." The jury could also have inferred that Dr. Lu knew of this advice and felt no need to repeat it. We cannot deprive the verdict winner of any favorable inferences.

Perhaps the weakest aspect of appellants' case, however, is the lack of expert medical testimony on three crucial issues: the nature and magnitude of the undisclosed risks at issue, the existence of any undisclosed alternative methods of treatment and the nature and magnitude of the risks presented by the undisclosed alternatives. In *Festa v. Greenberg, supra,* this court held that a plaintiff cannot prevail on an implied consent cause of action absent evidence of this kind. We recognized that Pennsylvania is one of a growing number of jurisdictions to adopt a "prudent patient" standard of informed consent. This standard tests the adequacy of the physician's pre-treatment disclosures by requiring the fact finder to determine whether the patient received all of the information that a reasonable person would deem "material." We concluded in *Festa* that even though the ultimate assessment of "materiality" is for the fact finder to make, expert testimony is nevertheless necessary on the important secondary issues that lie outside the knowledge of the lay person. *See Festa, supra* 354 Pa.Super. at 360, 511 A.2d at 1378. *See also Jozsa v. Hottenstein, supra,* 364 Pa.Super. at 472–474, 528 A.2d at 607–08. Thus, only an expert is able to explain the harms that can arise from the procedure in question and estimate the likelihood that those harms will occur. Only an expert, moreover, can identify viable alternative treatments and discuss the risks involved. *See Festa, supra* 354 Pa.Super. at 356–60, 511 A.2d 1376–78.[7] Without an informed discus-

7. In *Jozsa v. Hottenstein, supra,* 364 Pa.Super. at 474, 528 A.2d at 608, we concluded that a plaintiff need not offer expert testimony on all of these issues. For example, the plaintiff can prevail on an informed consent claim if his or her expert discusses the frequency with which

sion of the risks and alternatives, the fact finder cannot determine rationally whether a reasonable person would have deemed the undisclosed knowledge "material."

Appellants in the present case offered the testimony of one medical expert. This expert concluded that the surgery performed by Dr. Lu violated the "basic rules of fingertip reconstruction" and that these violations caused Rebecca's current problems. The expert explained in detail how the surgery deviated from "acceptable" procedure. Although the testimony certainly bolstered appellants' negligence claims, it offered none of the necessary expert insight on risks and viable alternatives. Under the *Festa* rationale, appellants' informed consent claims would not have survived a motion by Dr. Lu for compulsory nonsuit. We therefore must reject appellants' demand for judgment n.o.v.

## IV.

In light of the foregoing discussion, we affirm the judgment of the Lancaster County Court of Common Pleas in favor of appellee Milton Lu, M.D.

the undisclosed harm occurs during the treatment in question, even though the expert fails to discuss viable alternatives.