HILL, J.,
On the morning of June 27, 1981, Michael Silver, M.D., a psychiatrist, evaluated plaintiff Sandalio Russell at the facilities of the West Philadelphia Community Mental Health Consortium. Mr. Russell had been brought there at the request of his family who wanted him involuntarily committed pursuant to section 302 of the Mental Health Procedures Act, 50 P.S. §7302, which provides for involuntary emergency examination and treatment if a person is found to be severely *258 mentally disabled. Following his examination of Mr. Russell, Dr. Silver did not cause Mr. Russell to be involuntarily committed but instead discharged him that same day.
Following his discharge, Mr. Russell suffered injuries on June 29, 1981. Plaintiffs brought three actions, which have been consolidated, in which they contend that Dr. Silver’s discharge of Mr. Russell was a substantial factor in bringing about his injuries.
On April 9, 1984, Dr. Silver was deposed. At that time he refused to answer, upon advice of counsel, three hypothetical questions posed to him by plaintiffs’ counsel. The three hypothetical questions at issue are the following:
“(1) Q: If you had agreed with Mr. Kerlin that in the intrapsychiatric report that item that was circled number four, his depression, the symptom check list of 6-27-81, if you found that he had profound problems with suspiciousness, paranoia and feelings of persecution as Mr. Kerlin had found, would your results have been different, your diagnosis, and your actions in relation to the involuntary commitment of Mr. Russell?
“(2) Q: The sister in her 302 wrote out certain items. If you had relied exclusively what the sister had mentioned in the 302, and if the patient had confirmed those items, would you have committed Mr. Russell?
“(3) Q: If he had confirmed that he had stopped eating, would you have found that as a basis to commit him?” Deposition of Michael Silver, M.D., at 48, 88, 89.
Counsel for Dr. Silver concede that since he is a physician he may be asked opinion questions during his deposition. As stated in the explanatory note to Pa.R.C.P. 4003.5:
*259 “It should be emphasized that Rule 4003.5 is not applicable to discovery and deposition procedure where a defendant is himself an expert, such as a physician, architect or other professional person, and the alleged improper exercise of his professional skills is involved in the action. Such a defendant can be examined by written interrogatories under rule 4005 or by oral deposition under Rule 4007.1. If so examined, a defendant cannot assert that his opinion may not be discovered without his consent.” Pa.R.C.P. 4003.5, explanatory note — 1978. See also, Neal by Neal v. Lu, 365 Pa. Super. 464, 470-1, 530 A.2d 103, 107 (1987).
Counsel for Dr. Silver contend, however, that plaintiffs may not seek to discover his opinion by means of hypothetical questions. No cases have been submitted, nor have any been found, which support this interpretation of the rules. In fact, First National Bank & Trust Co. of Waynesboro v. E.R. Squibb & Sons Inc., 41 D.&C. 3d 52 (1985), supports a contrary interpretation.
In First National Bank a defendant physician refused to answer a number of questions during his deposition which called for an opinion. After a review of the applicable case law the court concluded that the defendant physician could be asked opinion questions and commented:
“We are mindful of the limitations, as enunciated in David [v. Lower Bucks Hospital, 56 F.R.D. 21 (E.D. Pa. 1972)] and Williams [v. Thomas Jefferson Hospital, 54 F.R.D. 615 (E.D. Pa. 1972)], supra, on the discovery of opinions. That is, the information sought must pertain to matters within the doctor’s area of expertise; hypothetical questions must be based upon facts of record; the opinion question must be based upon a complete statement of all *260 relevant facts; and the question should not be so broad as to elicit a medical treatise.” 41 D.&C. 3d 52, 55-6.
The three hypothetical questions asked of Dr. Silver meet the above requirements. All three questions pertained to matters within Dr. Silver’s area of expertise. All three questions were based upon facts of record, in this case the testimony of Mr. Kerlin, an employee of the West Philadelphia Mental Health Consortium, and Mr. Russell’s sister. All three questions, although they may not be based upon a complete statement of all the facts, contain a sufficiently complete statement.[1] Finally, the questions are not so broad as to elicit a medical treatise.
Additionally, plaintiffs’ motion to compel this discovery, although it comes several years after the original deposition, is not so unreasonably burdensome that it runs afoul of the limitations placed on discoveiy by Pa.R.C.P. 4011.[2]
*261 Accordingly, Dr. Silver is ordered to respond to the three hypothetical questions which were not answered at his deposition of April 9, 1984, and a limited number of non-repetitive and appropriate additional questions arising from and connected with his response to these questions.
ORDER
And now, December 6, 1990, upon consideration of plaintiffs’ motion to compel the deposition of defendant Michael Silver, M.D., responses thereto and following oral argument, it is hereby ordered and decreed that Dr. Silver appear at the offices of Fine and Staud at a mutually convenient time within 20 days from the date of this order. Dr. Silver is ordered to respond to the questions which his attorney instructed him not to answer at pages 48, 88 and 89 of his deposition taken on April 9, 1984. Dr. Silver is further ordered to respond to a limited number of non-repetitive and appropriate additional questions arising from and connected with his response to these questions.

. In SEPTA v. Workmen’s Compensation Appeal Board (Saxon), 82 Pa. Conunw. 590, 595, 477 A.2d 9, 12 (1984), the Commonwealth Court stated:
“[A] hypothetical question need not encompass the assertions of both the proposing and opposing parties; rather, a party may state specifically the particular facts he believes find support in the evidence and ask the opinion of the expert on such facts, assuming them to be true. Battistone v. Benedetti, 385 Pa. 163, 169-70, 122 A.2d 536, 539 (1956).”

. Pa.R.C.P. 4011 states:
“Rule 4011. Limitation of Scope of Discovery and Deposition
“No discovery or deposition shall be permitted which
“(a) is sought in bad faith;
“(b) would cause unreasonable annoyance, embarrassment, oppression, burden or expense to the deponent or any person or party;
“(c) relates to a matter which is privileged; or
“(d) Rescinded November 20, 1978, effective April 16, 1979.
*261 “(e) would require the making of an unreasonable investigation by deponent or any party or witness;
“(f) Rescinded November 20, 1978, effective April 16, 1979.”