Steven KATZ and Dorothy
Katz, Appellants,

v.

ST. MARY HOSPITAL and Dr.
Alan I. Snyder, Appellees.

Superior Court of Pennsylvania.

Argued Dec. 11, 2002.
Filed Jan. 28, 2003.

David L. Marshall, Doylestown, for appellants.

Matthew Shindell, Philadelphia, for appellees.

Before: McEWEN, P.J.E., BOWES and TAMILIA, JJ.

OPINION BY TAMILIA, J.

¶ 1 At the conclusion of a medical malpractice lawsuit, a jury returned a verdict in favor of appellee Dr. Snyder on the grounds that he did, in fact, obtain informed consent of appellant, Steven Katz, before performing a surgical procedure known as transurethral bladder neck incision. Appellants, Steven and Dorothy Katz, now appeal from the judgment entered thereafter. We affirm.

¶ 2 The trial court summarized the facts of this case as follows:

[Appellants] filed a Complaint against St. Mary Hospital and Alan I. Snyder, M.D. alleging a lack of informed consent and loss of consortium. Prior to trial, the hospital was dismissed from the suit by agreement. The Court conducted a trial by jury commencing on February 25, 2002. After deliberating for thirty-five minutes, the jury returned a verdict in [appellee Dr. Snyder's] favor on February 27, 2002. In response to special interrogatories in the form of a verdict sheet, the jury found that Dr. Snyder did obtain informed consent from Steven Katz prior to performing the surgical procedure. [Appellants] then timely filed this post-trial motion, requesting a new trial. [The motion was subsequently denied and appellants filed a notice of appeal.]

The procedure at issue was a transurethral bladder neck incision. Dr. Snyder performed the procedure on June 6, 1990. Mr. Katz contended that he was not fully informed of the risks and alternatives prior to surgery. During an office visit prior to the surgery, both Mr. and Mrs. Katz were furnished a consent form. Both [appellants] read the form and Mr. Katz signed it. Neither had any questions regarding the form. Sometime after the surgery, Mr. Katz complained of urinary voiding difficulty and erectile dysfunction.

Trial Court Opinion, McAndrews, P.J., 6/20/02, at 1–2.

¶ 3 On appeal, appellant raises the following issues:

1. Whether the Lower Court erred by permitting Dr. Snyder to testify as an expert and offer opinion testimony when he had not disclosed these

opinions in answer to expert witness interrogatories or in response to the Order compelling him to serve complete and responsive verified answers to expert witness interrogatories?

2. Did the Lower Court err by permitting [appellee Dr. Snyder] to testify in response to leading questions?

3. Was the jury verdict finding that Dr. Snyder obtained informed consent was [sic] against the weight of the evidence when Dr. Alan Snyder admittedly failed to inform Steven Katz of recognized alternatives to surgery?

Appellants' brief at v.

■ ¶ 4 Appellants first allege the trial court erred by permitting appellee Dr. Snyder to testify as an expert and render his medical opinions at trial when he had failed to disclose such opinions during the discovery proceedings in the form of a pretrial report or answer to an interrogatory in blatant violation of Pa.R.C.P. 4003.5. **Discovery of Expert Testimony. Trial Preparation Material.** By allowing such practice, appellants argue, the court permitted appellee to circumvent an important rule put in place to prevent unfair surprise to the opposing party regarding the facts and substance of an expert's proposed testimony.

¶ 5 It is well established that questions regarding the admission or exclusion of evidence are within the sound discretion of the trial court and will be reversed on appeal only where a clear abuse of discretion exists. *Swartz v. General Elec. Co.,* 327 Pa.Super. 58, 474 A.2d 1172 (1984). With this standard in mind, we review the claim on appeal.

¶ 6 As alluded to above, appellants assert Dr. Snyder failed to divulge "facts known and opinions held by" himself as a medical expert about which he testified in court. Therefore, the trial court, appel-

lants argue, should have excluded appellee's expert testimony. A virtually identical issue was addressed by this Court in *Neal by Neal v. Lu,* 365 Pa.Super. 464, 530 A.2d 103 (1987). In *Neal by Neal,* a defendant physician in a medical malpractice suit offered his own medical opinions at trial. The opposing side objected to his testimony on the grounds that the defendant had not identified himself as an expert witness during discovery pursuant to Rule 4003.5. In finding in favor of the defendant physician, we offered the following rationale:

> The doctor did not 'acquire' his opinions on the treatment of Rebecca's finger 'in anticipation of litigation.' He did not expend time and money developing his own knowledge or employing himself as an expert to gain a tactical advantage in the law suit brought against him by appellants. His opinions and knowledge, in short, were not the work product of a well-prepared litigant. They pre-dated any litigation ... As such, they fall outside any reasonable definition of the phrase 'acquired or developed in anticipation of litigation.'

*Neal by Neal,* supra at 108.

¶ 7 The preceding rationale is directly applicable to the case at hand. Presently, appellee, a medical doctor, did not "acquire or develop" his medical opinions on the treatment of appellant's conditions in preparation for trial; appellee's medical opinions and knowledge were acquired long before this action commenced. As such, appellee's opinions proffered at trial fall outside the scope of Rule 4003.5. Furthermore, as did the *Neal by Neal* Court, we find support for our ruling in the Explanatory Note accompanying Rule 4003.5, which reads in pertinent part:

> "It should be emphasized that Rule 4003.5 is not applicable to discovery and deposition procedure where *a defendant is himself an expert, such as a physi-*

*cian* . . . and the alleged improper exercise of his professional skills is involved in the action. . . ."

Pa.R.C.P. 4003.5 Explanatory Note—1978 [1] (emphasis added).

¶ 8 Based on the aforementioned, this Court, once again, finds Rule 4003.5 of the Pennsylvania Rules of Civil Procedure has no application to a party such as appellee but rather is applicable only where the expert witness' opinions were "acquired or developed in anticipation of litigation or for trial." Pa.R.C.P. 4003.5(a); *Neal by Neal, supra* at 106–08.[2] *See also Miller v. Brass Rail Tavern, Inc.*, 541 Pa. 474, 487, 664 A.2d 525, 531–532 (1995); *Toogood v. Rogal*, 764 A.2d 552, 558 (Pa.Super.2000), *appeal granted*, 568 Pa. 38, 791 A.2d 1154 (2002).

¶ 9 Appellants next allege the court erroneously permitted defense counsel to present his client's testimony through a series of "leading questions." Appellants argue the cumulative effect of these leading questions and their corresponding answers was highly prejudicial and deprived them of a fair trial.

¶ 10 The law in this area is clear. The allowance of leading questions lies within the discretion of the trial court and a court's tolerance or intolerance of leading questions will not be reversed absent an abuse of discretion. *Commonwealth v. Johnson*, 373 Pa.Super. 312, 541 A.2d 332 (1988). In support of their claim, appellants direct our attention to their post-trial motions in which they list twelve alleged leading questions asked by defense counsel to his client. *See* Appellants' Brief in Support of Post–Trial Motions, 5/20/02, at 4. At the outset we note, based on our review of the trial transcript, no objection was placed on the record with respect to half of those alleged leading questions. Therefore, we find any claim based on those questions waived. *See Beaummont v. ETL Services, Inc.*, 761 A.2d 166 (Pa.Super.2000); Pa.R.C.P. 227.1(b)(1) Post–Trial Relief. With regard to the remaining questions, the trial court explained that it permitted some leading questions due to the "length and complexity of the testimony." Trial Court Opinion at 4. Further, the court expounded, "none of the elicited responses is of such a character that the information would not have come into evidence but for the leading format." *Id.* As such, it concluded any error was harmless. We find the court's rationale persuasive. Pennsylvania Rule of Evidence 611(c) Leading Questions [3] recognizes the neces-

---

1. In *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 436 A.2d 147 (1981), our Supreme Court explained, although the notes and explanatory comments which are issued with the rules of civil procedure do not constitute rules themselves, they do, however, indicate the spirit and motivation behind the drafting of the rules and, therefore, they serve as guidelines for understanding the purpose(s) of those rules. *See* Pa.R.C.P. 129(e) **Construction of Rules.**

2. As an aside, we note that appellants were free to explore appellee Dr. Snyder's opinions via written interrogatories under Pa.R.C.P. 4005 **Written Interrogatories to a Party**, or by oral deposition under Pa.R.C.P. 4007.1 Procedure in Deposition By Oral Examination. These readily available measures would have precluded the prejudice of which appellants herein complain.

3. Pa.R.E. 611(c) reads:

    (c) Leading Questions
    Leading questions should not be used on the direct or redirect examination of a witness *except as may be necessary to develop the witness' testimony*. Ordinarily, leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party or a witness identified with an adverse party, interrogation may be by leading questions; a witness so examined should usually be interrogated by all other parties as to whom the witness is not hostile or adverse as if under redirect examination.

    Pa.R.E. 611(c) (emphasis added).

sity of permitting leading questions "to develop" a witness' testimony. Moreover, appellants have not cited any legal authority to successfully demonstrate that the type of questions posed by defense counsel went beyond the recognized exception articulated in the Rules of Evidence or that these questions and the elicited responses proved prejudicial. *See generally* Pa. R.A.P. 2119, Argument. Accordingly, we find no abuse of discretion.

¶ 11 Lastly, appellants contend the jury's finding that appellee obtained informed consent was against the weight of the evidence and a new trial is warranted. A new trial will be granted on the grounds that the verdict is against the weight of the evidence where the verdict is so contrary to the evidence it shocks one's sense of justice. *Watson v. American Home Assurance Company,* 454 Pa.Super. 293, 685 A.2d 194 (1996), *appeal denied,* 549 Pa. 704, 700 A.2d 443 (1997). An appellant is not entitled to a new trial where the evidence is conflicting and the finder of fact could have decided either way. *Id.*

¶ 12 Appellants contend the verdict is contrary to the evidence in that appellee Dr. Snyder "admittedly failed" to inform Mr. Katz of certain alternatives to surgery and did not inform him of the recognized risks and the success rate of the performed medical procedure.

¶ 13 At trial, appellants' counsel asked appellee if he had ever mentioned a drug called Minipress, which aids the flow of urine from the bladder, to Mr. Katz (N.T., 2/25/02, at 29, 31). In response, appellee answered in the negative (*id.* at 31). Appellants' counsel then asked appellee if he had informed Katz that he could suffer erectile dysfunction from the surgical procedure to which appellee replied it is not a condition triggered by the surgery (*id.*). Accordingly, appellants claim the record is devoid of any evidence that appellee in-

formed his patient of the inherent risks of the subject surgical procedure. Appellants, however, neglect to mention that appellee repeatedly testified he always has informed all of his patients about the risks associated with any surgical procedure and he was certain that he had adequately informed Mr. Katz of the risks associated with his surgery (N.T., 2/26/02, at 25–27).

¶ 14 As appellants' argument is based solely on appellee's testimony, we agree with the trial court that this is a credibility issue. Accordingly, the jury as the finder of fact was free to believe all, part or none of appellee Dr. Snyder's testimony. *Watson, supra* at 199. The jury obviously found appellee's testimony credible and ruled in his favor. As the record supports its decision, the trial court properly left the jury's verdict undisturbed. As such, we find no basis to overturn the court's ruling.

¶ 15 Judgment affirmed.