# Spotts v. Small

C.P. of Lancaster County, no. CI-98-00700.

*John J. Speicher,* for plaintiff.
*James W. Saxton,* for defendant Schantz.
*Wiley P. Parker,* for defendants Small and Cardiovascular, et al.
*Amanda L. Smith,* for PA office of Attorney General.
*Robert B. Hoffman,* for Medical Society of PA and Lancaster.

CULLEN, *J.,* April 2, 2003—Presently pending before the court is the motion of defendant, Beverly Schantz D.O., to preclude the testimony of plaintiff's proposed expert witness, Henrietta Pagan Athole Graeme McNeil Jacobi, pursuant to the Medical Care Availability and Reduction of Error Act.[1] Also pending is plaintiff's challenge to the constitutionality of section 512 of the MCARE Act.

---

1. 40 P.S. §1303.101 et seq.

The procedural and factual background of this matter is uncomplicated.

In early December 1995, Charles Spotts suffered an acute myocardial infarction. He was transferred from Lock Haven Hospital to Lancaster General Hospital where he underwent a coronary angioplasty and stent placement in his left anterior descending coronary artery. During the procedure, he developed hypertension and syncope which prevented the placement of a second stent. His right coronary artery remained totally occluded.

Mr. Spotts was discharged from the hospital on December 10, 1995, under the care of Roy Small M.D., and Cardiovascular Associates of Lancaster Ltd.

On January 9, 1996, Mr. Spotts slipped on an icy sidewalk and suffered a torn medial meniscus in his left knee.

On February 23, 1996, Mr. Spotts underwent surgery to repair the torn medial meniscus. Beverly Schantz D.O., was the anesthesiologist assigned for this surgical procedure. During the surgery, Mr. Spotts suffered a myocardial infarction and died shortly afterwards.

On January 20, 1998, plaintiff, Vickie Spotts, Mr. Spotts' widow and administratrix of his estate, commenced a medical malpractice action against Dr. Small, Cardiovascular Associates of Lancaster Ltd., Dr. Schantz, Alfred Cooke Jr. M.D., the orthopedic surgeon, and Lancaster General Hospital.[2] The defendants filed answers to the complaint denying liability, and the parties undertook discovery.

2. Dr. Cooke and Lancaster General Hospital were subsequently dismissed as defendants in this action.

In the course of discovery, plaintiff identified Dr. Henrietta Pagan Athole Graeme McNeil Jacobi as her expert witness in the area of anesthesiology who would testify with respect to Dr. Schantz' deviation from the standard of care with respect to her treatment of Mr. Spotts.

On July 9, 2002, Dr. Schantz filed a motion to preclude Dr. Jacobi's testimony and opinions on the ground that she did not meet the requirements to render an expert medical opinion specified in section 512 of the MCARE Act.[3] On July 12, 2002, a similar motion was filed on behalf of Dr. Small and Cardiovascular Associates of Lancaster Ltd.[4]

Whether Dr. Jacobi would testify as an expert witness at trial was discussed at the pretrial conference on August 7, 2002. On September 5, 2002, plaintiff's counsel notified the court and opposing counsel that he still intended to call Dr. Jacobi as an expert witness and requested the court address the pending motions in limine. Following further consultation with counsel, a hearing on the motion was scheduled for November 21, 2002.

---

3. 40 P.S. §1303.512.

4. The motion was filed on behalf of Dr. Small and Cardiovascular Associates of Lancaster Ltd., because Dr. Jacobi had expressed certain opinions in her report with respect to the care provided to Mr. Spotts by the cardiologist. (Defendant Beverly Schantz D.O.'s, motion to preclude the testimony and opinions of plaintiff's proposed expert witness, Athole Jacobi M.D., pursuant to the Medical Care Availability and Reduction of Error Act, Exhibit A) (hereafter defendant's motion to preclude testimony). The motion on behalf of these defendants was not pursued because plaintiff's counsel had represented to the court and opposing counsel that Dr. Jacobi would not be asked to express any opinion in the area of cardiology at trial. (N.T. November 21, 2002, pp. 4-5.)

On November 20, 2002, plaintiff notified the attorney general pursuant to Rule 235 of the Pennsylvania Rules of Civil Procedure that she was challenging the constitutionality of section 512 of the MCARE Act.

The court held an evidentiary hearing on the motion in limine on November 21, 2002.

On January 27, 2003, the court heard oral argument on plaintiff's challenge to the constitutionality of section 512 of the MCARE Act.[5]

Dr. Jacobi has been an anesthesiologist since 1955. (N.T. November 21, 2002, p. 14.) She is currently licensed in Pennsylvania and California and has the equivalent of board certification in her field. (*Id.* at 16-17.) Prior to 1993, she had an active clinical and academic career. (Plaintiff's exhibit 1.)

As a result of an automobile accident in 1993, Dr. Jacobi is disabled and no longer able to practice anesthesiology. (N.T. November 21, 2002, pp. 16, 47-48; defendant's motion to preclude testimony, exhibit E, p. 107.[6]) At that time, she was Professor of Anesthesiology at the Medical College of Pennsylvania (plaintiff's exhibit 1) and is now professor emerita at that institution.[7] (*Id.,* N.T. November 21, 2002, pp. 21, 60-61).

---

5. In addition to briefs submitted by the parties, the attorney general filed a brief in support of the constitutionality of section 512 of the MCARE Act as did the Pennsylvania Medical Society and Lancaster County Medical Society.

6. Exhibit E of defendant's motion to preclude testimony is a transcript of a portion of Dr. Jacobi's April 2000 trial testimony in *Curley v. Durkin,* No. 1998-1710, Pa.C. Centre Cty. (N.T. November 21, 2002, pp. 13-14, 64.)

7. The former Medical College of Pennsylvania is now part of Drexel University.

Dr. Jacobi has not been in an operating room as a practicing physician since 1993. (*Id.* at 36; defendant's motion to preclude testimony, exhibit E, p. 139). She has no teaching responsibilities as professor emerita at Drexel University and has offered only one two-hour lecture in anesthesia in a medical setting since her retirement due to disability.[8] (N.T. November 21, 2002, pp. 21-22, 34-36; defendant's motion to preclude testimony, exhibit E, p. 121.) She does complete the continuing education requirements necessary to maintain her license (N.T. November 21, 2002, pp. 18-20, 29-30) subscribes to professional journals and purchases textbooks in the field of anesthesia. (*Id.* at 21, 29.)

Dr. Jacobi ceased to act as a reviewer for professional journals in 1993 and all of her research and grants and publications occurred prior to her retirement. (Plaintiff's exhibit 1.)

In April 2000, Dr. Jacobi testified that since retirement all of her professional income has come from her services as an expert witness. (Defandant's motion to preclude testimony, exhibit E, p. 127.) Dr. Jacobi further testified at the hearing on November 21, 2002, that she would be providing two lectures in her field at Drexel University in the near future, one to members of the otorhinolaryngology department and one to members of the department of orthopedics. (N.T. November 21, 2002, pp. 22, 24-25, 33-34; defendant's exhibit 1 and 2.)

---

8. Dr. Jacobi has been a speaker at three legal seminars since her retirement as well as speaking on health policy on one occasion. (N.T. November 21, 2002, pp. 22, 35; plaintiff's exhibit 1; defendant's motion to preclude testimony, exhibit E, pp. 127-28, 136-38.)

Effective October 4, 2002, Dr. Jacobi was appointed clinical associate professor in the department of medicine at the University of Medicine & Dentistry of New Jersey—School of Osteopathic Medicine.[9] (*Id.* at 26-27, 39-40; defendant's exhibit 4.) At the time of the hearing in November 2002, Dr. Jacobi's duties in this position had not yet been defined although it was her understanding that initially in 2003 she would be lecturing to interns. (*Id.* at 26-28, 47.)

## DISCUSSION

Section 512 of the MCARE Act effective May 19, 2002, provides as follows:

*"Section 1303.512. Expert qualifications*

*"(a) General rule.*—No person shall be competent to offer an expert medical opinion in a medical professional liability action against a physician unless that person possesses sufficient education, training, knowledge and experience to provide credible, competent testimony and fulfills the additional qualifications set forth in this section as applicable.

*"(b) Medical testimony.*—An expert testifying on a medical matter, including the standard of care, risks and alternatives, causation and the nature and extent of the injury, must meet the following qualifications:

"(1) Possess an unrestricted physician's license to practice medicine in any state or the District of Columbia.

---

9. Dr. Jacobi testified that she will be a clinical associate professor in the department of medicine because the School of Osteopathic Medicine does not have an anesthesia department. (N.T. November 21, 2002, pp. 40, 46.)

"(2) Be engaged in or retired within the previous five years from active clinical practice or teaching.

"Provided, however, the court may waive the requirements of this subsection for an expert on a matter other than the standard of care if the court determines that the expert is otherwise competent to testify about medical or scientific issues by virtue of education, training or experience.

*"(c) Standard of care.*—In addition to the requirements set forth in subsections (a) and (b), an expert testifying as to a physician's standard of care also must meet the following qualifications:

"(1) Be substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care.

"(2) Practice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue, except as provided in subsection (d) or (e).

"(3) In the event the defendant physician is certified by an approved board, be board certified by the same or a similar approved board, except as provided in subsection (e).

*"(d) Care outside specialty.*—A court may waive the same subspecialty requirement for an expert testifying on the standard of care for the diagnosis or treatment of a condition if the court determines that:

"(1) the expert is trained in the diagnosis or treatment of the condition, as applicable; and

"(2) the defendant physician provided care for that condition and such care was not within the physician's specialty or competence.

*"(e) Otherwise adequate training, experience and knowledge.*—A court may waive the same specialty and board certification requirements for an expert testifying as to a standard of care if the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in or full-time teaching of medicine in the applicable subspecialty or a related field of medicine within the previous five-year time period." 40 P.S. §1303.512.

In addition to the general requirements enumerated in section 512(a) which must be met by any witness offering expert testimony in a medical professional liability action, a witness such as Dr. Jacobi who will offer an opinion on the standard of care must also meet the additional qualifications specified in sections 512(b) and (c). There is no allegation that Dr. Jacobi fails to meet the qualifications listed in section 512(c). Accordingly, the focus of the inquiry will be on the requirements of section 512(b).

In order to render an opinion with respect to the standard of care, section 512(b) mandates that the witness must (1) possess an unrestricted physician's license to practice medicine in any state or the District of Columbia,[10] and (2) be engaged in or retired within the previous five years from active clinical practice or teaching. To determine whether Dr. Jacobi meets these criteria in this case, the court must first decide at what point in time these qualifications must be met.

10. The testimony reflects, and Dr. Schantz does not dispute, that Dr. Jacobi is currently licensed to practice medicine in Pennsylvania and California and had been continuously licensed since 1993 when she retired due to her disability. (N.T. November 21, 2002, p. 16.)

The statute is silent with respect to the point from which the five-year period specified in section 512 (b)(2) is to be calculated.[11]

Dr. Schantz argues that the proposed expert witness must meet the requirements of section 512 as of the time of trial. As an alternative, she posits that at the earliest, the relevant point should be when the expert witness submits a report which will be the basis for trial testimony. Plaintiff contends that the relevant time at which to assess the expert witness' qualifications is the time of the occurrence of the events about which the witness will render an opinion, *i.e.*, the time of the deviation from the standard of care.

After considering the arguments of the parties, the court concludes that to be qualified to render an opinion with respect to the standard of care, the witness must be engaged in or retired within the previous five years from active clinical practice or teaching calculated from the time of the alleged deviation from the standard of care which is the basis of the medical professional liability action against the physician.

The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. §1921(a). When the words of the statute are not explicit, the intent of the legislature may be ascertained by considering (1) the occasion and necessity for the statute, (2) the circumstances under

---

11. Implicit in the statute is a recognition that a witness could hold an unrestricted license to practice medicine and still not have engaged in active clinical practice or teaching for a period in excess of five years. Since Dr. Jacobi is and has been licensed at all relevant times, the court need not decide whether the witness must be licensed at the time of the occurrence, the time of the report, or the time of trial.

which it was enacted, (3) the mischief to be remedied, (4) the object to be attained, (5) the former law, if any, including other statutes upon the same or similar subjects, (6) the consequences of a particular interpretation, (7) the contemporaneous legislative history, and (8) legislative and administrative interpretations of such statute. 1 Pa.C.S. §1921(c)(1)-(8) It is to be presumed that the legislature does not intend a result that is absurd, impossible of execution or unreasonable. 1 Pa.C.S. §1922(1).

The MCARE Act does not set forth explicitly the legislature's intention in enacting section 512, and the available legislative history does not provide reliable guidance.[12] Based upon the language employed, the purpose of section 512 of the MCARE Act is to establish a more stringent standard for the admission of expert medical testimony in medical malpractice actions.

In order to establish a prima facie case of medical malpractice, the plaintiff must present an expert witness[13] who will testify, to a reasonable degree of medical certainty, that the acts of the defendant physician deviated from good and acceptable medical standards, and that such deviation was the legal cause of the plaintiff's harm.

---

12. Legislators' remarks with respect to 1802 of 2001 provided no guidance. See Pa. Legis. Journal-House, pp. 88-140 (January 29, 2002); Pa. Legis. Journal-House, pp. 297-323 (February 13, 2002); Pa. Legis. Journal-Senate, pp. 1453-54 (March 13, 2002); Pa. Legis. Journal-House, pp. 407-409 (March 13, 2002).

13. There is an exception to the general rule that expert testimony is required to establish a prima facie case in a medical malpractice action. Expert testimony is not required when the matter in dispute is so simple and the lack of skill or want of care so obvious as to be comprehensible by lay persons. *Brophy v. Brizuela,* 358 Pa. Super. 400, 517 A.2d 1293 (1986).

*Mitzelfelt v. Kamrin,* 526 Pa. 54, 584 A.2d 888 (1990). The applicable standard of care is that which existed at the time of the event or events giving rise to the plaintiff's claim. *Maurer v. Trustees of the University of Pennsylvania,* 418 Pa. Super. 510, 614 A.2d 754 (1992). The MCARE Act does not change existing law. Section 512(c)(1) specifically provides that an expert testifying as to a physician's standard of care must be substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care.

Viewed against this background, and in the absence of contrary disclosed legislative intent, section 512 (b)(2) should be interpreted as requiring an expert medical witness to be engaged in, or retired within the previous five years from active clinical practice or teaching as of the time of the alleged breach of the standard of care. The fact that the General Assembly did not use the phrase "as of the time of the alleged breach of the standard of care" in section 512(b)(2) as it did in section 512(c)(1) which addresses the same subject matter does not prohibit the court from construing the two sections consistently. See 1 Pa.C.S. §1932.

In addition to the language and structure of the statute, several other considerations lend support to the court's construction of section 512(b)(2).

A physician in active clinical practice or teaching at the time of or within five years[14] prior to the alleged breach of the standard of care is likely to have more fa-

---

14. While one may argue that five years is too long a period of time to be removed from active clinical practice or teaching, this is a policy determination to be made by the legislature and not by the courts.

miliarity and experience with the applicable standard of care than a witness who may meet these requirements as of the time of trial. This is of particular significance in medical malpractice cases where a substantial period of time may elapse between the time of the injury and the time of trial. In the present case, for example, the alleged breach of the standard of care occurred in February 1996, and trial is now scheduled for June 2003.

The time of the alleged breach of the standard of care, unlike the time of the filing of an expert report or the time of trial, is a fixed point and not subject to change over the course of the litigation. Using the time of the breach of the standard of care as a focal point avoids the problem which could otherwise arise where an expert who met the statutory requirements as of the time of the alleged negligent conduct and who provided an expert report before retirement and was prepared to testify at trial could become "unqualified" if the trial were postponed to a date more than five years after his retirement. Further, calculating the five-year period from the time of trial instead of the time of the alleged breach of the standard of care could have the unintended consequence of preventing a retired defendant physician from presenting his own expert testimony in his defense at trial as he would be entitled to do.[15] *See Katz v. St. Mary Hospital,*

15. Section 512(a) provides that, "*No person* shall be competent to offer an expert medical opinion in a medical professional liability action against a physician unless that person . . . fulfills the additional qualifications set forth in this section as applicable." 40 P.S. §1303.512(a). Section 512 applies to all expert medical witnesses whether testifying for the plaintiff or the defendant, and there is no exception for a witness who is also a party. Had Dr. Schantz retired completely within a week after the filing of the complaint in January 1998, she would not be qualified under her interpretation of the stat-

2003 Pa. Super. 37; *Neal by Neal v. Lu*, 365 Pa. Super. 464, 530 A.2d 103 (1987).

The few statutes from other jurisdictions dealing with the qualifications of expert witnesses cited by Dr. Schantz in her brief are consistent with the court's interpretation. Unlike section 512, the time period in which the expert witness must be engaged in practice or teaching in each of these statutes is defined specifically, and in each instance it is done with reference to the time of the alleged negligent act. Ala. Code §6-5- 548(b)(3), (c)(4) (during the year preceding the date that the alleged breach of the standard of care occurred); N.C. Evid. Code §8C-1, Rule 702 (during the year immediately preceding the date of the occurrence that is the basis for the action);[16] M.C.L.A. §600.2169 (1)(a)-(c) (during the year preceding the occurrence; and if a specialist, at the time of the occurrence); Tex. Rev. Civ. Stat. Ann. Art. 4590c, §14.01(a)(1) (at the time such testimony is given or was practicing medicine at the time the claim arose).[17]

The court finds the arguments for calculating the five-year period from the time of trial unpersuasive. While section 512 does refer to expert medical "testimony" and an expert "testifying," the thrust of the statu-

---

ute to provide expert medical testimony in her own defense at trial. The court cannot presume that the legislature intended such an absurd and unreasonable result.

16. See *Leatherwood v. Ehlinger*, 151 N.C. App. 15, 564 S.E.2d 883 (2002).

17. Kansas requires that an expert witness in a medical malpractice case spend 50 percent of the expert's professional time in actual clinical practice within the two-year period preceding the incident giving rise to the action. K.S.A. 60-3412. *Endorf v. Bohlander*, 995 P.2d 896 (Kan. App. 2000).

tory requirements is directed to the *reliability* of this evidence, not the *time* at which it may be presented to the fact-finder. The argument that the five-year period should be determined with reference to the time of trial because the expert will have the benefit of the most up-to-date information on the most current medicine and science and have the most current experience and knowledge is fatally flawed. The most up-to-date information and most current medicine are irrelevant to a determination of whether the defendant physician has breached the applicable standard of care. The standard of care is determined as of the time of the alleged breach, not the time of trial. *Maurer v. Trustees of the University of Pennsylvania,* 418 Pa. Super. 510, 614 A.2d 754 (1992) (insufficient evidence to establish the standard of care with respect to the use of Didronel on brain-injured patients in 1981, the time of the alleged negligent conduct).

Dr. Schantz' argument also fails to address adequately the consequences of her interpretation of section 512, some of which have been previously noted.[18] The most serious consequence is that the competence of an expert witness to testify could be determined by a factor as fluid and arbitrary as the trial date which has no relationship whatsoever to the education, training, knowledge and experience of the witness, the applicable standard of care or the substance of the medical expert's opinion.

Dr. Schantz did not present any argument in support of her alternate position that the five-year period is to be calculated from the date the expert witness files a report.

---

18. The court does not intend to comment upon the ad hominem arguments presented.

The court can find no support for this alternate position in the statute or any other source.

The breach of the standard of care at issue in this case is alleged to have occurred in February 1996. Dr. Jacobi retired from active teaching in 1993 which is within the five-year period provided in section 512(b)(2). The court finds, therefore, that she satisfies the requirements of the MCARE Act with respect to the challenge made by Dr. Schantz. Accordingly, the motion to preclude the expert testimony of Dr. Jacobi will be denied.

Since the court has determined that an expert medical witness must meet the requirements of section 512(b)(2) as of the time of the alleged breach of the standard of care, it is not necessary to determine whether Dr. Jacobi is engaged in active clinical practice or teaching as of the time of trial. The hearing on Dr. Jacobi's qualifications was held in November 2002, but trial is not scheduled until June 2003, seven months after the hearing. In order to provide the parties with an adequate record for purposes of appellate review, if necessary, regarding the court's interpretation of section 512(b)(2), plaintiff will be provided with the opportunity prior to trial to supplement the record with respect to Dr. Jacobi's teaching schedule since the hearing.

Finally, the court concludes that it would be inappropriate and unnecessary to address plaintiff's challenge to the constitutionality of section 512 of the MCARE Act since the matter in dispute has been decided on nonconstitutional grounds. *In re Fiori*, 543 Pa. 592, 673 A.2d 905 (1996) (courts should avoid constitutional issues when the issue at hand may be decided upon other grounds). Any discussion of the constitutional issue raised would constitute an unwarranted advisory opinion.

Therefore, the court enters the following:

ORDER

And now, April 2, 2003, defendant Beverly Schantz D.O.'s motion to preclude the testimony and opinions of plaintiff's proposed expert witness, Athole Jacobi M.D. pursuant to the Medical Care Availability and Reduction of Error Act is denied.

Plaintiff's challenge to the constitutionality of section 512 of the MCARE Act is dismissed as moot.