# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Ovid,                          :
                Petitioner    :
                         :
                         :   No.  333 C.D. 2018
           v.              :
                         :   Submitted:  August 10, 2018
Workers' Compensation Appeal          :
Board (Dolgencorp, LLC),              :
               Respondent   :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                 FILED:  November 29, 2018

Anthony Ovid (Claimant) petitions for review from the February 22, 2018 order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a workers' compensation judge (WCJ) granting his claim petition for a closed period followed by a termination.  Claimant contends that the WCJ failed to issue a reasoned decision under section 422(a) of the Workers' Compensation Act (Act).[1]  Upon review of the WCJ's 156 findings of fact, and thorough and consistent credibility determinations, we will affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §834.  Section 422(a) provides:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and

**(Footnote continued on next page…)**

On August 26, 2015, Claimant sustained a work-related injury while operating a stand-up forklift for Dolgencorp, LLC (Employer) in the course and scope of his employment. Specifically, Claimant maneuvered the forklift inadvertently and in such a manner that he ended up being pinned between the forklift and the steel from a warehouse rack, compressing his left arm and chest in the process. Claimant was able to release himself and dropped to the floor, due to difficulty breathing. After a period of seven minutes, several supervisors came to his aid. The supervisors transported Claimant to a medical facility, Urgent Care, where Claimant reported pain to his chest, neck, left shoulder, and upper back and displayed a laceration on his right arm. (WCJ's Findings of Fact (F.F.) Nos. 9-15.)

Thereafter, Claimant missed three days of work. On the second day of his absence, Claimant sought treatment at Reading Hospital's Emergency Room (ER) for continued pain. A physical examination revealed that Claimant was positive for myalgia, joint swelling, and neck pain, and negative for back pain and neck stiffness, and his neck was noted to have a normal range of motion and was supple. Claimant

---

**(continued…)**

> explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834.

was diagnosed with contusions to his left and right chest and left arm, and he was released from the ER with ongoing restrictions. (F.F. Nos. 16-26.)

On September 1, 2015, Claimant returned to work in a modified duty position and continued to work in that positon until October 15, 2015, when it was no longer available. On October 15, 2015, Employer issued a notice of denial, denying that Claimant had sustained any work-related injury. On December 21, 2015, Claimant filed a claim petition, alleging that he sustained injuries to his neck, back, left shoulder, and head. Employer denied the material allegations and the case was assigned to a WCJ who held hearings. (F.F. Nos. 2-4, 27-28.)

At the March 8, 2016 hearing, Claimant testified to the facts above and added that he developed headaches that appeared to be occipital in nature. At the September 6, 2016 hearing, Claimant testified that his left shoulder, left arm, neck, and head were getting worse, rather than better. Claimant stated that he had neck pain that travels or "shoots" up into his head and that the amount of pain has increased over time. According to Claimant, he is an avid weightlifter and confirmed that, prior to the date of injury, he had been participating in a home-based weightlifting program three days a week for approximately the last ten years. (F.F. Nos. 33, 42, 44-46, 48.)

Claimant presented the deposition testimony of Charles Williams, M.D., who is board certified in anesthesiology and focuses his practice on treating patients in pain management. Dr. Williams reviewed a cervical MRI of Claimant that reflected a mild, broad-based disc protrusion to the left at C2-3 and C3-4, as well as disc degeneration with central herniation at C4-5, a mild to moderate protrusion to the left at C5-6, disc bulging at C6-7 and C7-T1, with no evidence of either fracture or cord compression. Dr. Williams also reviewed the results of an EMG and determined

3

that they supported a finding of subacute C5 radiculopathy on the left, and he attributed this condition to the work injury, specifically the broad-based protrusion at C5-6. Dr. Williams also documented a positive Spurling's compression test on the left. (F.F. Nos. 53-54, 57-62.)

Ultimately, Dr. Williams diagnosed Claimant with multi-level cervical disc displacement and herniation at C4-5 with left side radiculopathy. Dr. Williams relayed that, on May 18, 2016, Claimant's then-most recent examination, Claimant continued to complain of neck pain with aching pain radiating into the left shoulder and left arm, and Dr. Williams noted tenderness to palpation, decreased range of motion, and limited flexion and extension. According to Dr. Williams, Claimant was improving overall, but had not fully recovered, and he treated Claimant with a series of injections, manual manipulation, and aggressive physical therapy. Dr. Williams stated that the injuries to Claimant's shoulder, hands, and elbows had fully recovered as of the May 18, 2016 examination. (F.F. Nos. 66-70.)

During the course of his questioning, Dr. Williams opined that a traumatic event is required to cause a disc herniation in a person who is 28 years old, Claimant's then current age. Dr. Williams conceded that the diagnosis provided by the ER doctor did not include any cervical injury and admitted that there was desiccation at every level from C2-T; he acknowledged that desiccation was a degenerative finding and that it is unusual to have such widespread desiccation in someone as young as Claimant. Dr. Williams did not believe that a person of Claimant's age could have developed a disc herniation from general lifting, and he expressed the view that, although weightlifting could cause disc bulging, it could not cause the herniation. Dr. Williams also confirmed that the Spurling's compression

4

test was performed only once, when he initially examined Claimant. (F.F. Nos. 59, 72-74, 78.)

In addition, Claimant submitted the deposition testimony of Dr. Christian Fras, M.D., who is a board certified orthopedic surgeon. Dr. Fras testified that in March 2016, Claimant's principal complaint was neck pain, a physical examination revealed cervical spasm and tenderness, and a Spurling's test was positive for neck pain. With respect to the EMG study that was reviewed and relied upon by Dr. Williams, Dr. Fras confirmed that he agreed with Dr. Williams that the cervical radiculopathy was directly related to the work injury. Ultimately, Dr. Fras diagnosed Claimant with cervical disc herniation with radiculopathy, aggravation of cervical degenerative disc disease, and cervical spondylosis, and stated that these diagnoses were directly related to the work injury. Specifically, Dr. Fras stated that, in his opinion, the cervical disc herniation was superimposed on Claimant's preexisting degenerative disc condition and was sustained as a result of the work injury. Dr. Fras also provided an alternate theory indicating that, if the disc herniation had been preexisting, it was asymptomatic prior to the work injury and became symptomatic following the work accident. According to Dr. Fras, Claimant's left shoulder and arm complaints were related solely to the cervical radiculopathy and there were no separate diagnoses related to those body parts. In his view, Dr. Fras did not believe that Claimant's weightlifting activities could have had a significant impact on his cervical spine, indicating that it was far more likely to contribute to lumbar disc degeneration. (F.F. Nos. 80, 92, 96-97, 107, 109.)

Dr. Fras testified that he last examined Claimant in June 2016, and that Claimant had not recovered from his work-related injuries and could not return to his pre-injury position. Although Dr. Fras originally prescribed Claimant a course of

5

physical therapy, respecting Claimant's desire to avoid surgical treatment, in June 2016 he recommended that Claimant undergo anterior cervical decompression and fusion at C4-5. However, at the time of Dr. Fras' deposition, Claimant was not scheduled for surgery. (F.F. Nos. 89, 99, 102.)

In rebuttal, Employer presented the deposition testimony of Stuart Gordon, M.D., a board certified orthopedic surgeon who performed an independent medical examination of Claimant on April 7, 2016. Dr. Gordon stated that Claimant's primary complaint was soreness in the left side of the neck. Dr. Gordon testified that he performed a physical examination of Claimant and this examination was unremarkable from an objective basis; although the neck demonstrated a 50 percent reduction in range of motion, the test was purely subjective, and Claimant's reflexes were brisk and symmetric. In addition, Dr. Gordon performed the Spurling's maneuver three times, the results were all negative and no radicular complaints were elicited, and Claimant did not display any symptoms that would be objectively consistent with radiculopathy. Dr. Gordon diagnosed Claimant's work-related injuries as consisting of skin lacerations, and neck, shoulder, and upper back strains, and he opined that Claimant had fully recovered from these injuries and their residual effects as of April 7, 2016. (F.F. Nos. 114-116, 121, 125-126, 142, 146.)

In rendering his opinion, Dr. Gordon stated that Claimant did not require cervical surgery and denounced the idea that Claimant suffers from a cervical disc condition or radiculopathy. In reviewing the cervical MRI, Dr. Gordon noted the multiple disc protrusions and a single disc herniation at C4-5, but explained that none of these findings represented a recent or work-related injury because there was no "hyper-intense" signal in the pulse sequences on the T2 weighted images. Regarding the EMG study, Dr. Gordon expressed his view that the test is not a reliable

6

diagnostic tool, being open to a subjective interpretation and that, nonetheless, the EMG findings did not have a strong positive correlation with the cervical MRI because the herniation is located at the C4-5 level on the MRI while the EMG indicated a positive at C5, the level below. Dr. Gordon noted that neuro-compressive tests were completely normal and that the cervical MRI did not disclose any nerve root impingement or acute inflammatory process. Further, Dr. Gordon stated that multilevel desiccation could be expected given Claimant's history of weightlifting and stated that it is possible for a person of 28 years of age to have degenerative findings on an MRI when active in weightlifting and sports. (F.F. Nos. 127, 129-131, 134, 137, 143, 144.)

By decision and order dated March 27, 2017, the WCJ found the testimony of Claimant credible in part. More specifically, the WCJ accepted Claimant's testimony insofar as Claimant explained the mechanism of his injury, initial course of treatment, complaints of subjective pain, and "the apparent worsening of his complaints between the first and second hearings." (F.F. No. 148.) However, the WCJ rejected as not credible the testimony that Claimant offered "regarding the causal relation of any of his imaging findings to the work injury or with regard to the source of his ongoing complaints . . . to the extent it is contradicted by the testimony of Dr. Gordon." (F.F. No. 148.)

Concerning the opinions of the medical experts, the WCJ accepted their opinions where consistent. Inasmuch as the opinions were inconsistent or conflicted, the WCJ found the opinions and testimony of Dr. Gordon to be more credible and worthy of belief than the opinions and testimony of Drs. Williams and Fras. (F.F. No. 149.)

7

In determining that Dr. Williams' testimony was less credible than that of Dr. Gordon, the WCJ found that Dr. Williams, at times, provided testimony that was internally inconsistent or was inconsistent with and contradicted by the credible portions of Drs. Fras and Gordon's testimony. The WCJ noted that Dr. Williams performed the Spurling's test, a "provocative maneuver," only at the first, initial examination and did not repeat it thereafter. (F.F. No. 150.)

In reviewing the testimony of Dr. Fras, the WCJ found that it was credible in very limited respects, but determined that the remainder was not credible. In discrediting the bulk of Dr. Fras' testimony, the WCJ noted that Dr. Fras failed to sufficiently explain why Claimant's symptoms "were much improved" in March 2016 but "by the final examination in June 2016 the symptoms had returned and actually progressed"; that is, Dr. Fras was unable to account "for how or why Claimant's symptoms suddenly accelerated months after he was removed from work." (F.F. No. 151.) The WCJ further noted that Dr. Fras opined that Claimant suffered an aggravation of the entire cervical spine, or, in the alternative, a disc herniation at the C4-5; however, Dr. Fras did not explain how Claimant's radicular complaints were caused by the findings on the MRI, which contained no indication of cervical cord compression or injury. The WCJ determined that Dr. Fras did not reconcile his theories of the injury with the fact that the MRI and the EMG did not show radiculopathy at the level of the herniated disc. Accordingly, the WCJ found the testimony of Dr. Fras to be less credible than the testimony of Dr. Gordon.

In accepting the opinions of Dr. Gordon as prevailing, the WCJ noted, among other things, that his testimony was consistent with the ER records and other medical documentation which showed that, in the proximate time frame following Claimant's injury, Claimant did not make any complaints related to a neck or cervical

8

injury, he had tested negative for back and neck pain, and his neck had a normal range of motion and was supple. The WCJ found particularly persuasive Dr. Gordon's opinions "regarding the preexisting nature of the findings present on the MRI and the inconsistencies between those findings and the EMG report." (F.F. No. 152.) The WCJ further stated that the "opinions of Dr. Gordon are consistent with his rather thorough and detailed physical examination." (F.F. No. 152.)

Based on the credible testimony of Dr. Gordon, the WCJ concluded that Claimant sustained work-related injuries on August 26, 2015, in the form of skin lacerations and neck, shoulder, and upper back strains. The WCJ further concluded, again based on the credible testimony of Dr. Gordon, that Claimant had fully recovered from these injuries on April 7, 2016. Therefore, the WCJ awarded Claimant benefits for the closed period of August 26, 2015, to April 7, 2016. (WCJ's Conclusions of Law Nos. 2-3, 6.)[2]

Claimant appealed to the Board, which affirmed.

Before this Court,[3] Claimant presents an array of arguments, claiming that the WCJ issued a decision that was not reasoned, but was instead unreasonable, irrational, and illogical. Although Claimant advances his contentions under the rubric

---

[2] In addition, the WCJ granted the penalty petition of Claimant based on the unreasonable contest of Employer, concluding that Employer lacked a legitimate basis to issue a notice of denial and contest liability prior to April 7, 2016, the date on which benefits were terminated. The WCJ imposed a 25% penalty against all unpaid indemnity benefits and awarded attorney's fees at an hourly rate less than that requested by Claimant's counsel. Employer did not appeal any aspect of the WCJ's decision. In his appeal, Claimant did not challenge the percentage of the penalty imposed by the WCJ or the amount of the attorney's fees.

[3] Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether findings of fact are supported by substantial evidence. *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehab)*, 15 A.3d 944, 947 n.1 (Pa. Cmwlth. 2010).

9

of the reasoned decision requirement of section 422(a) of the Act, a great deal of his assertions attack the WCJ's credibility determinations.

Initially, we note that in an original claim petition, a claimant bears the burden of proving all of the elements necessary to support an award of benefits. *Potere v. Workers' Compensation Appeal Board (Kemcorp)*, 21 A.3d 684, 689-90 (Pa. Cmwlth. 2011). To show that an injury was related to employment, the claimant must establish a causal connection between work and the injury, and unequivocal medical evidence is required where it is not obvious that an injury is causally related to the work incident. *Povanda v. Workmen's Compensation Appeal Board (Giant Eagle)*, 605 A.2d 478, 486 (Pa. Cmwlth. 1992); *Cromie v. Workmen's Compensation Appeal Board (Anchor Hocking Corporation)*, 600 A.2d 677, 679 (Pa. Cmwlth. 1991).

The claimant's burden to prove a work-related injury never shifts to the employer and remains with the claimant throughout the pendency of the claim petition. *Potere*, 21 A.3d at 690. If the WCJ determines that the evidence supports a finding of disability only for a closed period, the WCJ is free to make such a finding. *Id.* Otherwise, to terminate benefits, an employer has to establish either that a claimant had fully recovered from his work-related disability or that any current disability arises from a cause unrelated to the work injury. *Pryor v. Workers' Compensation Appeal Board (Colin Service Systems)*, 923 A.2d 1197, 1205 (Pa. Cmwlth. 2006).

It is a fundamental tenet of workers' compensation law that the WCJ, as fact-finder, has complete authority over questions of witness credibility and evidentiary weight. *Williams v. Workers' Compensation Appeal Board (USX Corp.-Fairless Works)*, 862 A.2d 137, 143 (Pa. Cmwlth. 2004).

> For purposes of appellate review, it is irrelevant whether there is evidence to support contrary findings; if substantial evidence supports the WCJ's necessary findings, those findings will not be disturbed on appeal. As the ultimate fact-finder, the WCJ has exclusive province over questions of credibility and evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. A court may overturn a credibility determination only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of facts, or so otherwise flawed, as to render it irrational.

*Verizon Pennsylvania, Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1161 (Pa. Cmwlth. 2015).

Under section 422(a) of the Act, a WCJ must adequately explain the reasons for rejecting or discrediting competent evidence when conflicting evidence is presented. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1047 (Pa. 2003). In addition, the WCJ may not reject uncontroverted evidence without reason or for an irrational reason, but must identify such evidence and sufficiently explain the reasons for its rejection. *Id.* For witnesses testifying before the WCJ, it is appropriate for the WCJ to base his or her determination upon the demeanor of the witnesses and, in the absence of "some special circumstance," a mere conclusion as to which witnesses were credible is sufficient for a reasoned decision. *Id.* at 1052-53; *PPL v. Workers' Compensation Appeal Board (Rebo)*, 5 A.3d 839, 845 (Pa. Cmwlth. 2010). However, when witnesses testify only by deposition, the WCJ must articulate an actual objective basis for the credibility determination. *Daniels*, 828 A.2d at 1053.

Claimant first argues that the WCJ issued an illogical and unreasoned decision by simultaneously finding Claimant's testimony to be credible with respect

to a worsening of his condition between the hearings and determining that he had fully recovered from his work-related injuries.

This contention, however, overlooks the fact that the WCJ only accepted Claimant's testimony as credible to the extent that it was not contradicted by the expert testimony of Dr. Gordon. The WCJ specifically rejected Claimant's testimony "regarding the causal relation" and "source of his ongoing complaints." (F.F. No. 148.) On the other hand, the WCJ credited the opinion of Dr. Gordon that the multilevel desiccation and degenerative findings displayed on the MRI evidenced preexisting conditions, and that these conditions, along with the pain associated with them, could be related to Claimant's weightlifting activities. (F.F. Nos. 130, 137, 152.) Based on Dr. Gordon's credible testimony, the WCJ determined that Claimant's work-related injuries consisted of skin lacerations and neck, shoulder, and upper back strains, and that Claimant had fully recovered from these injuries as of April 7, 2016. Consequently, even though the WCJ credited Claimant's testimony that he experienced increased pain in his neck and head throughout the hearings, the WCJ nonetheless determined that this pain was not work-related, concluding instead that Claimant had fully recovered from any residual symptoms that were associated with his work-related injuries. As these findings are logically consistent and congruous in their application, we find no error on the part of the WCJ.

Next, Claimant asserts that the WCJ's decision was unreasonable in that Dr. Gordon did not know the specific details of Claimant's weightlifting routine, *e.g.*, what type of weights he used and how many pounds he lifted, and yet he determined that Claimant's cervical spine injuries could possibly be attributed to weightlifting and not work-related trauma. Claimant contends that, in this respect, Dr. Gordon rendered an opinion that was speculative and not based on facts of record.

12

This argument fails for several reasons. First, Claimant appears to challenge the admissibility of Dr. Gordon's testimony on the ground that his opinion lacked a competent factual basis[4] and was not expressed with the requisite degree of certainty. However, there is no indication that Claimant raised these evidentiary issues before the WCJ or in any of the proceedings below and, as such, they are waived. *See Riley v. Workers' Compensation Appeal Board (DPW/Norristown State Hospital)*, 997 A.2d 382, 387 (Pa. Cmwlth. 2010). Regardless, Claimant testified that before the work accident, he lifted weights at a friend's house for over 10 years, 3 times a week, for approximately an hour each session, focusing on the chest, biceps, and trapezius regions. (Reproduced Record (R.R.) at 446a-47a.) Under the standards for expert testimony, this factual foundation was sufficient to permit Dr. Gordon to opine as to the potential effects or consequences of Claimant's weightlifting activities, despite the fact he did not know all the intricate details involving Claimant's routine. *See DeGraw v. Workers' Compensation Appeal Board (Redner's Warehouse Markets, Inc.)*, 926 A.2d 997, 1001-02 & n.4 (Pa. Cmwlth. 2007) (stating that, although the medical expert admitted that he did not know the size or weight of the object the claimant was lifting or how far his arms were extended at the time of his injury, these omissions pertain to the weight to be accorded to his testimony, not its competency); *see also Calex, Inc. v. Workers' Compensation Appeal Board (Vantaggi)*, 968 A.2d 822, 824-25 & 828 (Pa. Cmwlth. 2009). As a result, any challenge that Claimant has to the adequacy of the factual foundation to support Dr.

---

[4] *See State Workmen's Insurance Fund v. Workmen's Compensation Appeal Board (Wagner)*, 677 A.2d 892, 895-96 (Pa. Cmwlth. 1996) ("An expert's opinion based upon assumptions contrary to the established facts is worthless."); *see also Newcomer v. Workmen's Compensation Appeal Board (Ward Trucking Co.)*, 692 A.2d 1062, 1066 (Pa. 1997) ("While an expert witness may base an opinion on facts of which he has no personal knowledge, those facts must be supported by evidence of record.").

13

Gordon's expert testimony is one that pertains to the weight to be afforded to that evidence, *see DeGraw*, 926 A.2d at 1001-02, which is a determination that lies within the exclusive province of the WCJ.

Moreover, Claimant bore the burden of proving the length and duration of his work-related injuries and that his injuries were causally related to the work accident. *Coyne v. Workers' Compensation Appeal Board (Villanova University)*, 942 A.2d 939, 945 (Pa. Cmwlth. 2008). Because Employer has no burden of proof on these issues, Employer's medical experts were not required to testify to the degree of certainty that is imposed on Claimant's experts.[5] Instead, the standard is much more relaxed for defense medical experts, and Employer's medical experts can offer rebuttal testimony stating that there are other "possible" causes for Claimant's problems. *See Jacobs v. Chatwani*, 922 A.2d 950, 961 (Pa. Super. 2007) (concluding that defense expert's testimony that the present symptomology "supports" a medical condition was stated to a sufficient degree of certainty for rebuttal purposes); *Neal by Neal v. Lu*, 530 A.2d 103, 109 (Pa. Super. 1987) (reaching the same conclusion based on defense expert's testimony which opined as to a "possible" cause of the medical condition).[6] Here, upon reviewing the findings of the cervical MRI, Dr. Gordon

---

[5] Generally, in workers' compensation proceedings, a claimant's medical expert has to render an unequivocal opinion and "must do more than testify that the claimant's condition 'might have been' or 'probably was' the result of the claimant's work." *Andracki v. Workmen's Compensation Appeal Board (Allied Eastern States Maintenance)*, 508 A.2d 624, 619 n.2 (Pa. Cmwlth. 1986); *see Cardyn v. Workmen's Compensation Appeal Board (Heppenstall)*, 534 A.2d 1389, 1391-92 (Pa. 1987) ("Medical evidence which is less than positive or which is based upon possibilities may not constitute legally competent evidence for the purpose of establishing the causal relationship.").

[6] The rationale for this rule has been stated thusly:

**(Footnote continued on next page…)**

stated that it was not "unusual" to see these malformations on a 28-year-old weightlifter and opined this is a "common problem" for weightlifters, explaining that when one lifts weights, he/she does the "Valsalva maneuver" which increases "intradiscal pressure." (R.R. at 305a-06a.) Hence, the WCJ acted within his discretion in finding the testimony of Dr. Gordon to be credible.

Claimant maintains that the WCJ erred in crediting Dr. Gordon's testimony because Dr. Gordon only reviewed the reports of the MRI, and did not personally review the images/films, and he had no understanding of Claimant's specific job duties and what physical exertion they required. However, this Court has repeatedly held that the fact that an expert does not have all of the claimant's medical records, or fails to review them or the claimant's job description, goes to the weight to be given to the expert's testimony, not its competency. *DeGraw*, 926 A.2d at 1001; *Samson Paper Co. v. Workers' Compensation Appeal Board (Digiannantonio)*, 834 A.2d 1221, 1224 (Pa. Cmwlth. 2003); *American Contracting Enterprises, Inc. v. Workers' Compensation Appeal Board (Hurley)*, 789 A.2d 391, 396 (Pa. Cmwlth. 2001). Therefore, like the challenges he advanced above, Claimant is merely seeking

---

**(continued…)**

> Absent an affirmative defense or a counterclaim, the defendant's case is usually nothing more than an attempt to rebut or discredit the plaintiff's case. Evidence that rebuts or discredits is not necessarily proof. It simply vitiates the effect of opposing evidence. Expert opinion evidence, such as that offered by [the defendant] in this case, certainly affords an effective means of rebutting contrary expert opinion evidence, even if the expert rebuttal would not qualify as proof. In general, the admission or rejection of rebuttal evidence is within the sound discretion of the trial judge.

*Neal by Neal,* 530 A.2d at 110.

to attack the credibility and weight determinations of the WCJ—determinations which are not subject to review on appeal.

Further, Claimant submits that the WCJ issued a decision that was not reasoned because Dr. Gordon was not as credible as Dr. Fras for a multitude of reasons. For example, Claimant argues that Dr. Gordon did not review the images/films of the MRI while Dr. Fras did; Dr. Gordon did not perform as many physical examinations of Claimant as Dr. Fras; Dr. Fras conducted more comprehensive exams compared to Dr. Gordon; Dr. Gordon was biased, performing independent medical examinations for defendants in a super-majority of the cases, while Dr. Fras is more fair, impartial, and objective; Dr. Fras possesses greater qualifications and credentials than Dr. Gordon; and Dr. Gordon's testimony had more inconsistencies when viewed alongside Dr. Fras' testimony.

Section 422(a) only requires a WCJ to issue a reasoned decision "so that this Court does not have to 'imagine' the reasons why a WCJ finds that the conflicting testimony of one witness was more credible than the testimony of another witness." *Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72, 76 (Pa. Cmwlth. 2012). Pursuant to section 422(a), a WCJ must articulate an actual objective basis for a credibility determination, in order for the decision to be a reasoned one which facilitates effective appellate review, and there are countless objective factors which may support a WCJ's credibility determinations. *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Co.)*, 893 A.2d 191, 194-95 (Pa. Cmwlth. 2006). Examples of such objective factors include, but are not limited to, situations where:

> an expert witness's opinion may be based upon erroneous factual assumptions; or an expert may have had less interaction with the subject; or the interaction was in a less

timely fashion; or the expert may betray a bias or interest in the matter[;] an expert witness may be unqualified or less qualified than the opposing party's expert; or may be impeached with inconsistencies or contradictions in his or her testimony or reports; or may be impeached in some other convincing fashion.

*Daniels*, 828 A.2d at 1053 (citations omitted).

We find that Claimant's contentions are misplaced. Although Claimant has arguably listed legitimate and objective reasons, which the WCJ could have relied upon to determine that Dr. Gordon was not a credible expert, the WCJ made no such determination. Instead, the WCJ found that Dr. Gordon was credible and accepted his testimony as more persuasive than any conflicting testimony offered by Claimant's experts, Drs. Williams and Fras. In this context, the fact that Claimant believes that there are objective reasons to discount Dr. Gordon's testimony as not credible is of no moment. "Clearly, a WCJ's acceptance of the medical opinion of one expert witness over that of another is not the basis for reversible error," *Southeastern Pennsylvania Transportation Authority v. Workers' Compensation Appeal Board (Herder)*, 765 A.2d 414, 416 (Pa. Cmwlth. 2000), and section 422(a) "does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations." *Dorsey*, 893 A.2d at 195.

Because the WCJ accepted the expert testimony of Dr. Gordon where it conflicted with the expert testimony of Drs. Williams and Fras, the WCJ was only obligated to articulate objective grounds for his decision to favor Dr. Gordon. As recounted above, the WCJ made detailed findings articulating the objective factors the WCJ relied upon to assess the credibility of Dr. Williams, Dr. Fras, and Dr. Gordon on an individual basis. (F.F. Nos. 149-152.) In these findings, the WCJ also provided a thorough comparison of the experts' testimony and explained why he afforded the greatest credence to the testimony of Dr. Gordon. In doing so, the WCJ

17

pointed out the strengths of Dr. Gordon's testimony, as well as the deficiencies of the testimony of Drs. Williams and Fras, and all these supporting reasons are readily verifiable in the record. Hence, Claimant's arguments fail.

Finally, Claimant advances some other contentions. He posits that the fact his "condition had worsened as of the date of Dr. Fras' examination of June 8, 2016, as compared to the prior examinations . . . does not serve as a valid basis to not find him credible." (Claimant's brief at 39.) Claimant also argues that the WCJ "ignored and refused to genuinely consider a substantial portion of Dr. Fras' credible testimony and ignored much of Dr. Gordon's incredible testimony." (Claimant's brief at 28.) Claimant further contends that the differential diagnosis utilized by Dr. Fras was sound, noting that Claimant had undisputedly sustained work-related injuries, received a positive indication on the Spurling's test, and the cervical MRI depicts conditions that cannot be refuted.

Contrary to Claimant's assertions, the WCJ stated an objective basis for finding that Dr. Fras' testimony contained a notable shortcoming:

> Dr. Fras' opinions become not credible in his inability to explain why after the March 2016 visit at which point Claimant's symptoms had subsided, Claimant suddenly became much more symptomatic in June 2016. I note that on March 17, 2016, those symptoms were much improved and then by the final examination in June 2016 the symptoms had returned and actually progressed as he has now documentary weakness and sensory changes which were not present during either of the first two examinations. Dr. Fras provided no explanation for how or why Claimant's symptoms suddenly accelerated months after he was removed from work.

(F.F. No. 151.)

Undoubtedly, a physician's failure to adequately account for a dramatic change in a claimant's physical status is a legitimate ground upon which to question

18

the credibility and weight of the physician's testimony. In the eyes of a WCJ, this deficiency can reasonably be construed to reflect or suggest that the physician misapprehended the nature or extent of a claimant's injuries and, also, their relationship to the accident or event that allegedly caused those injuries.

Moreover, "[s]ection 422(a) does not require the WCJ to discuss all of the evidence presented"; rather, "the WCJ is only required to make the findings necessary to resolve the issues raised by the evidence and relevant to the decision." *Dorsey*, 893 A.2d at 194 n.4. Here, the WCJ provided a comprehensive summation of Dr. Fras' testimony and medical theories. (F.F. Nos. 80-114.) Given the detailed and verifiable reasons the WCJ provided for deeming those opinions to be less credible than that proffered by Dr. Gordon, (F.F. Nos. 150, 152), there is nothing in the record to support the notion that the WCJ did not "genuinely consider" the testimony of Dr. Fras, as argued by Claimant. (Claimant's brief at 28.)

As a concluding matter, Claimant goes to great lengths in an attempt to establish that Dr. Fras employed superior methodological reasoning to support his differential diagnosis. However, these issues contain a matter that lies at the core of a credibility determination, which, as stated previously, is for the WCJ to make. *See Parkview Court Associates v. Delaware County Board of Assessment Appeals*, 959 A.2d 515, 521 (Pa. Cmwlth. 2008) (concluding that an argument challenging an expert's methodology "essentially seeks a new credibility finding . . . which is inappropriate on appeal."); *Church Street Associates v. County of Clinton*, 959 A.2d 490, 495 (Pa. Cmwlth. 2008) (concluding that a fact finder's "resolution of the conflicts within the two experts' testimony, as well as the weight assigned respectively thereto and the credibility determinations thereof, control on appeal.").

19

Having reviewed Claimant's arguments on appeal in this matter, the decisions of the WCJ and the Board, and the applicable law, this Court can discern no error that would require us to upset the determinations and orders of the tribunals below.

Accordingly, we affirm.


_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Ovid,                              :
                    Petitioner             :
                                           :    No.  333 C.D. 2018
          v.                               :
                                           :
Workers' Compensation Appeal               :
Board (Dolgencorp, LLC),                   :
                    Respondent             :

## *ORDER*

AND NOW, this 29th day of November, 2018, the February 22, 2018 order of the Workers' Compensation Appeal Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge