J-A14022-24

2024 PA Super 298

| ALEXANDER D. KUNKEL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ABINGTON MEMORIAL HOSPITAL | : | No. 2288 EDA 2023 |
| AND FRANCESCA DELACH, M.D. AND | : | |
| RYAN SHADIS, M.D. | : | |

Appeal from the Order Entered July 21, 2023
In the Court of Common Pleas of Montgomery County
Civil Division at No: 2018-26378

BEFORE: LAZARUS, P.J., STABILE, J., and LANE, J.

OPINION BY STABILE, J.: **FILED DECEMBER 13, 2024**

In this medical malpractice case, Alexander D. Kunkel appeals an order of the Court of Common Pleas of Montgomery County (trial court) denying his motion for post-trial relief. Kunkel received emergency medical care from Abington Memorial Hospital (AMH); Francesca Delach, M.D.; and Ryan Shadis, M.D. (collectively, Appellees) after being badly injured in an automobile accident.[1] During the first two days of his hospital stay, the contact lenses Kunkel had been wearing remained on his eyes. He later asserted that Appellees were negligent in delaying their removal, and in failing to promptly treat his resulting eye injuries once they were removed. A jury found Appellees' conduct to be negligent, but not the cause of Kunkel's asserted

---

[1] Kunkel had named several other defendants in his complaint – Raymond Bosche, R.N.; Doris Davis, R.N.; and Lisa Conrad, R.N. However, Kunkel did not name those parties in his notice of appeal.

injuries. Kunkel now contends that this adverse verdict resulted from the trial court's exclusion of testimony on the issue of causation by two of his treating physicians and one of his expert witnesses. We affirm.

In 2014, Kunkel was a sixteen-year-old passenger in an SUV that was involved in a serious accident. When the SUV rolled over, Kunkel was ejected from the vehicle. He sustained numerous catastrophic injuries that would leave him paralyzed.

Immediately after the accident, Kunkel was transported to AMH, where he was intubated and unconscious for about three days. He received treatment from AMH's Surgical Trauma Unit and Intensive Care Unit. Appellees, Dr. Shadis (a trauma surgeon) and Dr. Delach (a resident under the supervision of Dr. Shadis) were both alleged to be employees of AMH who provided care to Kunkel during that three-day span. Despite regular examinations of Kunkel's pupils in the first two days of his admission, the medical staff did not discover that Kunkel had been wearing contact lenses on both of his eyes. That fact only came to light after Kunkel's mother informed a nurse of it, at which point the contact lenses were removed.

Once Kunkel's condition had stabilized about a day later, he was transported to the Children's Hospital of Philadelphia (CHOP), where one of his treating ophthalmologists was Dr. Monte Mills. A second ophthalmologist, Dr. Stephen Orlin, treated Kunkel for a four-year period, beginning in 2015.

In 2018, Kunkel filed his initial complaint, alleging that he suffered from a pseudomonas bacterial infection in his eyes which left permanent scarring

on his corneas. During the ensuing litigation and preparation for trial, Kunkel produced expert reports concerning the nature of his eye injuries.

Dr. James Aquavella was identified as Kunkel's expert witness as to how the delay in removing his contact lenses, as well as the delay in treatment, caused permanent damage to his corneas and irreversible vision loss. His report, dated July 30, 2021, reads in pertinent part as follows:

> On the night of December 28 the cornea opacity was noted and no treatment given except lubricants. On Monday December 29th again a notation of cornea opacity during the long process required for transfer to CHOP. **It is my considered medical opinion that the presence of an acute (not previously observed) opaque cornea constitutes a true medical emergency which threatens the loss of sight. Alexander Kunkel should have received an ophthalmology consult and antibiotic eyedrops at a minimum by early Monday morning December 29[, 2014]**.
>
> * * * *
>
> It is well known by ophthalmologists and optometrists that soft contact lenses which have not been removed for several days result in a significantly increased risk of bacterial infection. That risk has been identified as between five and ten times normal. The over wear of the contacts created a most favorable environment for bacterial growth enhancing the opportunity for cornea ulceration. **When the lenses were ultimately removed no antibiotics were applied, [it constituted] a further negligent act. It is my considered medical opinion that the failure to recognize the presence of Mr. Kunkel's contact lenses compounded by the failure to remove the contact lenses in a timely manner constituted medical malpractice. Furthermore, this negligence was directly responsible for the subsequent bilateral pseudomonas infection resulting in permanent and irreversible ocular surface damage.**

Expert Report of Dr. James Aquavella, 7/30/2021, at 2-3 (emphases added).

Dr. Steven Nissman was identified by Kunkel as an expert on AMH's failure to recognize the opacity in Kunkel's left eye that was evident after his contact lenses were removed. Kunkel had alleged that this opacity was a separate injury which required immediate treatment with antibiotics and consultation with an ophthalmologist. Dr. Nissman opined in his report that the delay in administering this treatment caused permanent injury to Kunkel's eyes:

> On the morning of 12/29/14 his nursing record indicates that left corneal opacity was noted and the right eye had "discharge" and "scleral edema." **I do not see that topical antibiotics were ordered at this time, which would have been the appropriate treatment for a corneal ulcer**. A consult order was entered for an ophthalmology consult on 12/29/14 at 5:54 am noting the reason as "left corneal abrasion vs opacification." This, of course, is describing the corneal ulcer. There is no record that Alexander ever received an ophthalmology consult while at AMH. **There is also no record that topical antibiotics were administered to Alexander even after the corneal opacity was discovered at AMH.** Alexander was transferred to CHOP on Monday night, 12/29/14.
>
> It is a universally accepted medical fact that leaving contact lenses in while sleeping significantly increases the risk of bacterial corneal ulcers, which is exactly what happened in this case. By the time it was discovered by the AMH medical team that Alexander had contact lenses in his eyes, the hypoxia caused by having the contact lenses in for several days had already caused the corneal ulcers to form. **Once the contact lenses were removed and the corneal opacities were subsequently documented, there was still a delay in starting the treatment with topical antibiotic eye drops. Alexander was never provided with antibiotics to treat the corneal opacities at AMH even after they were discovered by the AMH team.** By the time Alexander got to the care of the ophthalmologists at CHOP, he was already in a dire ocular situation. His left cornea was described on presentation by the

CHOP ophthalmologist on 12/30/14 as "completely opacified" and the diagnosis as "advanced contact lens related ulcer."

It is my professional opinion, within a reasonable degree of medical certainty, that [Kunkel's] bilateral corneal ulcers formed as a direct result of being sedated with contact lenses left in his eyes for several days at Abington Memorial Hospital. In my opinion, the failure to timely identify and remove his contact lenses ultimately caused him to develop bilateral corneal scarring. **Once his eyes started to show signs of inflammation and corneal opacities and his contact lenses were removed, there was a failure to promptly conduct an ophthalmology consult and initiate appropriate treatment with antibiotic eyedrops. Alexander never received an ophthalmology consult nor antibiotic eyedrops while at AMH based on my review of the medical records.**

Alexander's vision remains permanently impaired in both eyes from the scarring left by the corneal ulcers and he has a poor prognosis for any significant visual improvement.

Expert Report of Dr. Steven Nissman, 7/28/2021, at 2-3 (emphases added).

Prior to trial, Appellees moved to limit the testimony of Kunkel's listed experts, Dr. Aquavella and Dr. Nissman, on two grounds.[2] First, Appellees asserted that the experts' opinions would be cumulative as to causation because their reports were duplicative in that regard. *See* Motion *In Limine*, 1/19/2023, at ¶¶ 27, 29. Second, Appellees argued that neither expert should be permitted to testify as to the standard of care applicable to Appellees, since the primary expertise of both experts was in the field of ophthalmology rather

_____

[2] Dr. Aquavella and Dr. Nissman both examined Kunkel a few weeks before trial and produced supplemental reports which were provided to Appellees in May 2023. Appellees moved to exclude those supplemental reports from the evidence at trial on timeliness grounds, and their motion was granted. Kunkel does not seek review of the order excluding those reports in the present appeal.

than Appellees' fields of emergency medicine and trauma surgery. ***See id***., at ¶¶ 13-16, 26-30.

In addition to seeking to limit Kunkel's expert witnesses, Appellees also moved to preclude both of Kunkel's treating physicians (Dr. Mills and Dr. Orlin) from testifying on the issue of causation. Appellees argued that those witnesses had not been listed for trial as experts despite that their opinions on causation were formed in preparation for litigation, not during the course of treatment.

The trial court granted Appellees' motion *in limine* as to Dr. Aquavella and Dr. Nissman. The testimony of these witnesses was found to be cumulative; it was also determined that neither witness would be permitted to testify as to the applicable standard of care. The ruling limited Kunkel to presenting just one of those two experts, and he selected Dr. Aquavella. Pursuant to the trial court's order, then, Dr. Aquavella was allowed to testify as to the causal link between Appellees' conduct and Kunkel's injuries, but Dr. Aquavella was not allowed to testify as to the applicable standard of care, *i.e.*, what Appellees as emergency medicine and trauma physicians should have done differently.

The trial court also reviewed the notes of Kunkel's treating physicians, Dr. Mills and Dr. Orlin, and ruled that they had not formed opinions on causation until their depositions were taken in preparation for litigation. ***See*** N.T. Trial, 6/1/2023, at 60-62. The trial court excluded the opinions of Dr.

Mills and Dr. Orlin as to whether Appellees' conduct was the cause of Kunkel's eye injuries.

At trial, the parties presented conflicting evidence as to causation. Kunkel's expert (Dr. Aquavella) testified that, in his opinion, Appellees' failure to promptly remove Kunkel's contact lenses after he was admitted to AMH caused him to develop a bacterial infection which affected his corneas. *See* N.T. Trial, 6/2/2023 (A.M. session), at 82-88. He reviewed the notes of Kunkel's treating nurses and doctors, and specifically recounted that when his contact lenses were removed, a "white opacity" was detected on a pupil exam. *See id*., at 87-88.

Significantly, Dr. Aquavella repeatedly attempted to answer questions from Kunkel's counsel regarding the treatment he believed should have been provided when the opacity was detected. *See id*., at 88-94. Appellees objected that such testimony was beyond the scope of Dr. Aquavella's expertise because it related to the applicable standard of care. *See id*., at 89. The trial court enforced its pretrial order by sustaining Appellees' objections on that ground. *See id*., at 89-96. The jury was then advised that Dr. Aquavella was only being called in his capacity as an expert on causation. *See id*.

Appellees' experts did not attribute Kunkel's eye infections to the delayed removal of his contact lenses. They instead testified that the injury resulted from a bacterial infection that had originated in, and spread from,

Kunkel's lungs. Their theory was that the lung infection had been caused by road debris which Kunkel had inhaled during the auto accident.

The jury found that Appellees were negligent in their care of Kunkel, but that Appellees were not liable for the eye injuries Kunkel had attributed to their negligent conduct. Kunkel moved for post-trial relief, and the trial court denied the motion. He timely appealed,[3] and in his brief, Kunkel raises two issues for our consideration:

> 1. Did the trial court err as a matter of law or otherwise abuse its discretion when it excluded in advance of trial one of [Kunkel's] two expert witnesses on the subject of causation as needlessly cumulative, where the expert's causation testimony would in fact have been properly corroborative rather than cumulative?
>
> 2. Did the trial court err as a matter of law or otherwise abuse its discretion when it precluded two of [Kunkel's] treating physicians from testifying that [Kunkel's] eye injuries were caused by [Appellees'] failure to remove [his] contact lenses in a timely manner?

Appellant's Brief, at 5.

Kunkel's first claim is that the trial court abused its discretion in finding the opinions of his two experts to be cumulative on the issue of causation and then forcing him to choose between them. He argues that his experts' testimony was not cumulative because it would have covered different aspects of causation which were relevant at trial.[4] That is, Kunkel stresses that Dr.

_____

[3] Both Kunkel and the trial court complied with Pa.R.A.P. 1925.

[4] As a sub-issue, Kunkel argues for the first time on appeal that the trial court committed a procedural error by finding his expert testimony to be cumulative
*(Footnote Continued Next Page)*

Aquavella's opinions concerned how the prolonged wearing of contact lenses caused permanent corneal scarring, whereas Dr. Nissman would have opined that Appellees caused a separate injury due to their failure to immediately administer fortified antibiotic eyedrops once the lenses were removed and the opacity in Kunkel's left eye was apparent.[5]

This Court reviews rulings on the admissibility of evidence under an abuse of discretion standard. *See Whyte v. Robinson*, 617 A.2d 380, 383 (Pa. Super. 1992); *Birt v. Firstenergy Corp.*, 891 A.2d 1281, 1287 (Pa. Super. 2006). A trial court may exercise this discretion by "limiting the number of witnesses whose testimony may be similar or cumulative." *See* Pa.R.Civ.P. 223(1). Evidence may be cumulative if it is "[a]dditional evidence that supports a fact established by the existing evidence." *Hassel v. Franzi*, 207 A.3d 939, 953 (Pa. Super. 2019) (internal citations omitted).

In a medical malpractice suit, a plaintiff must plead and prove four elements of negligence: a duty of care to the patient; a breach of that duty; the breach was a proximate cause or substantial factor in bringing about harm to the patient; and the damages were a direct result of the harm. *See*

_____

before the trial had commenced. *See* Appellant's Brief, at 22-23. This issue was not preserved for appellate review either at trial, in a post-trial motion, or in Kunkel's 1925(b) statement. The issue is therefore waived. *See* Pa.R.A.P. 1925(b)(4)(vii).

[5] Appellees suggest that Kunkel has waived this issue for appellate purposes because in his 1925(b) statement, he failed to specify that the expert testimony was not cumulative as the trial court found. *See* Appellees' Brief, at 13. We find, however, that Kunkel sufficiently preserved this claim for appellate review.

*Corrado v. Thomas Jefferson Univ. Hosp.*, 790 A.2d 1022, 1030 (Pa. Super. 2001).

The element of duty "is measured against the standard of care appropriate to the training of the physician and the time of the treatment." *Winschel v. Jain*, 925 A.2d 782, 796 (Pa. Super. 2007). Specialist physicians, including trauma surgeons, are "held to a higher standard of care than a general practitioner when the specialist is acting within his or her specialty." *Id*., at 797. In any medical malpractice case, the "plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury." *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003).

Here, the trial court found prior to trial that the expert opinions of Dr. Aquavella and Dr. Nissman were cumulative because their testimony would cover the same aspects of medical negligence – causation. *See* Trial Court 1925(a) Opinion, 11/2/2023, at 10. In its order granting Appellees' motion *in limine*, Kunkel was advised that only one of those two experts would be able to testify regarding that element of his claims. The trial court *also* stated in the order that neither of Kunkel's two experts would be permitted to testify regarding the applicable standard of care owed to a patient receiving emergency medical services because they were not qualified as experts in that field. *See id*.

The latter portion of the ruling is significant because the central point of Kunkel's argument is that the trial court erroneously excluded Dr. Nissman's

expert opinion concerning the injuries he sustained due to delayed treatment after Appellees removed his contact lenses. However, at trial, when Kunkel's counsel sought to elicit testimony from Dr. Aquavella about the treatment he should have, but did not receive, the trial court sustained Appellees' objection that it related to the standard of care, which was beyond the scope of Dr. Aquavella's expertise, as well as Dr. Nissman's.

Indeed, at several points during direct examination, Kunkel's counsel asked Dr. Aquavella about the medical care Appellees should have given Kunkel after removing his contact lenses and observing the opacity in his left eye. Dr. Aquavella's responses were all stricken because, pursuant to the trial court's pretrial order, he was a "causation expert, not standard of care expert." N.T. Trial, 6/2/2023 (A.M. session), at 90. Moreover, no qualified expert testified on Kunkel's behalf about Appellees' duty of care, or the type of emergency medical treatment that should have been afforded to Kunkel at that point, a day before he was transferred to CHOP.

For those reasons, the trial court did not err in limiting Dr. Aquavella's testimony, or in precluding Dr. Nissman from testifying. We agree with the trial court that the expert reports of Dr. Aquavella and Dr. Nissman were cumulative because they both addressed Appellees' failure to discover Kunkel's contact lenses, as well as their failure to immediately treat his injuries after the lenses were removed. *See* Expert Report of Dr. James Aquavella, 7/30/2021, at 2-3; Expert Report of Dr. Steven Nissman, 7/28/2021, at 2-3.

Regardless, Dr. Aquavella and Dr. Nissman were both precluded from opining on the injuries Kunkel sustained due to not receiving certain treatment after the removal of his contact lenses; this is because the factual predicate for that causation testimony was not established by any evidence relating to the standard of care applicable to Appellees.

In sum, neither expert physician was qualified to detail to the jury the treatment they thought Appellees, as emergency medicine and trauma physicians, should have provided. The absence of those predicate facts, in turn, prevented both physicians from opining on how Appellees caused the infection of Kunkel's eyes once the lenses were removed. Kunkel does not challenge the portion of the trial court's order prohibiting Dr. Aquavella and Dr. Nissman from testifying as experts on the standard of care owed by Appellees. Since that issue is not now before this Court, the trial court's order limiting the testimony of Kunkel's experts must be affirmed.

Kunkel's second claim on appeal is that the trial court erred in excluding the testimony of his two treating physicians – the ophthalmologists, Dr. Mills and Dr. Orlin – which would have causally linked Kunkel's eye injuries to Appellees' breach of the standard of care. He argues that, even though these witnesses were not listed in pretrial disclosures as experts, their testimony as to causation was nevertheless admissible because they formed their opinions on that issue when providing medical treatment.

The Pennsylvania Rules of Civil Procedure allow a party to compel the disclosure of any person another party expects to call as an expert at trial. *See* Pa.R.Civ.P. 4003.5(a). "A party may through interrogatories require . . . any other party to identify" their expert witnesses, the facts known by the expert, the opinions held by the expert, and "the subject matter on which the expert is expected to testify." Pa.R.Civ.P. 4003.5(a)(1). An expert opinion is defined in relevant part by Rule 4003.5 as an opinion "acquired or developed in anticipation of litigation or for trial." Pa.R.Civ.P. 4003.5(a). "An expert witness whose identity is not disclosed in compliance with subdivision (a)(1) of this rule shall not be permitted to testify on behalf of the defaulting party at the trial of the action." Pa.R.Civ.P. 4003.5(b).

Opinions that physicians reach when treating their patients are not considered expert testimony in Pennsylvania because they are not produced in anticipation of litigation. *See Katz v. St. Mary's Hosp.*, 816 A.2d 1125, 1127 (Pa. Super. 2003) (holding that where a doctor's opinions and knowledge were acquired before an action commenced, the doctor's "opinions proffered at trial fall outside the scope of Rule 4003.5."). Accordingly, treating physicians do not need to be listed as experts to make such opinions admissible. *See id*.

In the present case, the trial court found that (a) the record does not reflect that Dr. Mills and Dr. Orlin formed their opinions on causation during Kunkel's treatment, (b) the physicians only formed their opinions on causation

- 13 -

in preparation for litigation, and (c) those opinions were inadmissible because Kunkel had not identified the physicians as experts prior to trial.

It is undisputed that Dr. Mills and Dr. Orlin were not identified in Kunkel's discovery materials as expert witnesses. Our disposition therefore turns on a narrow factual point – whether the record supports the trial court's conclusion that, during Kunkel's treatment, Dr. Orlin and Dr. Mills did not form an opinion that the non-removal of Kunkel's contact lenses caused his eye injuries. We have reviewed the record, including the doctors' notes and treatment summaries, and agree with the trial court that no opinions on causation are evident in those materials.[6]

The first time either of the physicians specifically linked Kunkel's corneal injuries to contact lenses came in their deposition testimony. Accordingly, their opinions on medical causation were formed in preparation for litigation. These opinions would only have been admissible at trial had Kunkel timely followed the procedures outlined in Rule 4003.5. However, since Kunkel did not do so, the trial court acted within its discretion by precluding them from testifying on the cause of Kunkel's asserted eye injuries. *See* Pa.R.Civ.P. 4003.5(b).

Order affirmed.

Judge Lane joins the opinion.

---

[6] Notably, in his briefs, Kunkel does not support his claim by citing any of the treating physicians' notes which appear in the record.

- 14 -

President Judge Lazarus concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/13/2024