J-S24034-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LEWIS ISENBERG, INDIVIDUALLY AND AS THE TESTATOR OF THE ESTATE OF ANITA CIPRO, DECEASED | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 1179 WDA 2024 |
| JOSEPH T. JOSEPH, M.D., FRANK M. PEZZOLLA, ADMINISTRATOR OF THE ESTATE OF JOSE MILAN, M.D., AND SHARON PENNSYLVANIA HOSPITAL COMPANY D/B/A SHARON REGIONAL HEALTH SYSTEM | : : : : : : | |

Appeal from the Judgment Entered September 3, 2024
In the Court of Common Pleas of Mercer County Civil Division at No(s):
2018-678

BEFORE:   NICHOLS, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED: September 16, 2025**

Lewis Isenberg ("Isenberg"), Individually and as the Testator of the Estate of Anita Cipro, Deceased ("Decedent") appeals from the judgment entered in favor of him and Joseph T. Joseph, M.D. ("Dr. Joseph").  We affirm.

In this medical malpractice action, Dr. Joseph was Decedent's primary care physician.  In July 2016, Decedent suffered a heart attack and died at the Sharon Pennsylvania Hospital Company D/B/A Sharon Regional Health System ("Sharon Regional Hospital").  In 2018, Decedent's husband,

Isenberg, commenced the underlying suit, bringing claims of wrongful death,[1]

survival,[2] and loss of consortium against: (1) Dr. Joseph (2) Sharon Regional

Hospital; (2) Mark Horvath, D.O. ("Dr. Horvath"), an emergency room doctor;

and (4) Frank M. Pezzolla, Administrator of the Estate of Jose Milan, M.D. ("Dr.

Millan"),[3] where Dr. Millan was the cardiologist on call at the hospital.[4]  The

complaint averred, *inter alia*, that: (1) on March 1, 2016, Decedent presented

to Dr. Joseph with complaints of shoulder pain and diarrhea, and on March 29,

2016, underwent an electrocardiogram ("ECG"), which showed abnormal

results; (2) on June 21, 2016, Decedent presented to Dr. Joseph for routine

care and stated she had left shoulder pain, and Dr. Joseph "noted that her

exam was unremarkable;" (3) on July 16, 2016, Decedent went to the

_____

[1] *See Constantine v. Lenox Instrument Co.*, 325 A.3d 725, 751 (Pa. Super. 2024) (stating that the Wrongful Death Act, 42 Pa.C.S.A. § 8301, "permits the recovery of 'the value of the decedent's life to the family, as well as the expenses caused to the family by reason of the death'"), *appeal denied*, 2025 WL 1038547.

[2] *See Constantine*, 325 A.3d at 751 (explaining that the Survival Act, 42 Pa.C.S.A. § 8303, "permits a decedent's estate to recover the damages sustained by the decedent prior to his death [and that] 'survival damages are essentially those for pain and suffering endured by the decedent between the time of injury and death'").

[3] Although Isenberg spelled this defendant's last name as "Milan" in his notice of appeal, the filings in the trial court identify him as "Millan."  This memorandum will use the latter spelling.

[4] In his brief, Isenberg avers Dr. Millan was the "on-call cardiologist" at the hospital, he "was contacted and advised of [Decedent's] medical emergency," but "due to [his] own medical issues, he failed to report to the hospital." Isenberg's Brief at 6.

emergency department at Sharon Regional Hospital, and told Dr. Horvath she "did not feel well" and "never felt like this," and testing revealed, *inter alia*, "elevated liver function tests" and "a heavily calcified aorta," but "no ECG [was] ordered during this emergency room visit;" (4) Decedent "was discharged . . . with the instruction to follow up with Dr. Joseph;" (5) two days later, Decedent saw Dr. Joseph at his office, and told him "she was weak and could not eat anything[ and] her feet [were] swelling;" (6) Dr. Joseph "noted that 'maybe she has a touch of hepatitis so we will do a hepatitis panel on her;'" (7) that same night, Decedent returned to Sharon Regional Hospital's emergency department "with complaints of shortness of breath and dizziness;" and (8) Decedent died the next morning. Complaint, 3/8/18, at 4-6, 9.

Dr. Joseph filed pre-trial motions *in limine* seeking, *inter alia*, the preclusion of evidence that, prior to March 1, 2016, he prescribed narcotics to Decedent to treat shoulder pain, on the ground such evidence was not relevant. The trial court conducted a hearing and initially indicated that it would grant Dr. Joseph's motion. **See** N.T., 3/3/23, at 31. Isenberg argued, however, that: (1) Decedent reported shoulder pain to Dr. Joseph as early as 2010; and (2) in any event, Isenberg's expert witness' report opined that shoulder pain could be related to a cardiac issue and thus "should have been checked out." **Id**. at 33. The trial court then issued the following order:

J-S24034-25

[Isenberg] is precluded from introducing evidence concerning the sufficiency of Dr. Joseph's charting and Dr. Joseph's prescription of narcotics.

[Isenberg] may present expert testimony that Dr. Joseph treated [Decedent] for shoulder pain, that shoulder pain can be a cardiac condition, and that as of March 1, 2016 Dr. Joseph should have recognized the shoulder pain as a potential cardiac condition, but is precluded from offering criticisms of the care and treatment rendered prior to March 1, 2016.

Order #273, 3/6/23, at 1-2.[5]

The trial court summarized that subsequently, it entered "an order for the approval of settlement and distribution of wrongful death and survival actions. The Joint Tortfeasor Release discharged defendants" Sharon Regional Hospital, Dr. Horvath, and the estate of Dr. Millan.[6] Trial Court 1925 Opinion, 11/4/24, at unnumbered 2. This matter proceeded to a six-day jury trial in October 2023 against Dr. Joseph only. Both parties testified, and each

_____

[5] We note that on March 3, 2023, the trial court issued twenty-four separate orders disposing of motions *in limine*. For identification purposes, this order was time stamped, and entered on the docket, as filed on March 6, 2023. The phrase, "273 Order of 3.6.23" appears in the top right corner of the order.

Furthermore, we note that although the trial court permitted the parties to file motions for reconsideration from its motion *in limine* orders, Isenberg did not file one. Subsequently, however, he filed a motion *in limine* "to permit expert testimony regarding [D]ecedent's left shoulder pain and treatment for that pain." N.T., 9/26/23, at 2. The trial court conducted a hearing, at which it referred to its March 3, 2023 order and determined it had already disposed of this issue. *See id*. at 2-3.

[6] However, as we discuss *infra*, at trial, the jury was charged with determining additional questions of fact concerning Dr. Millan.

- 4 -

presented multiple expert witnesses; Isenberg also presented several fact witnesses.

Relevant to Isenberg's issues on appeal, in charging the jury, the trial court first instructed generally that it must decide whether Dr. Joseph was negligent. The court then instructed that it had already entered a directed verdict as to Dr. Millan's negligence:

> That is to say, I have found as a matter of law that Dr. . . . Millan was negligent by failing to appear in a timely manner that night. Therefore, the only issues that you must decide with respect to Dr. Millan are[:] one, whether Dr. Millan's negligence was a factual cause in bringing about [Decedent's] harm; and two, if so, the amount of damages to which [Isenberg] is entitled.

N.T. Jury Trial Vol. VI, 10/17/23, at 53-54. The court then instructed the jury generally as to the relevant standards of care, before stating:

> You must decide whether Defendant was negligent. I have already decided for Dr. Millan. From now on, if you hear Defendant, it is just Dr. Joseph. If you decide that the Defendant was negligent, then you must decide whether the Defendant's negligence was a factual cause of [Isenberg's] injuries. . . .

*Id*. at 55. The remainder of the court's jury instructions spanned thirteen pages of the trial transcript.

At the conclusion of the jury charge, the trial court asked, at side bar, whether either party had additional instructions. Dr. Joseph suggested adding Dr. Millan to the instruction on increased risk of harm. *See id*. at 68-69. Isenberg commented, "I made of note of it too," but did not raise any other challenge. *Id*. at 69. The trial court gave the amended instruction, and neither party made any additional objection.

The jury returned the verdict slip as follows. First, it found Dr. Millan was negligent, and Dr. Joseph was not negligent. It then found Dr. Millan's negligence was a factual cause of harm to Decedent, attributed 100% of the causal negligence to Dr. Millan,[7] and awarded Isenberg $400,000 in wrongful death damages and $10,000 in survival damages.[8]

Isenberg filed a timely post-trial motion and amended post-trial motion.[9] The latter averred that the trial court erred in: (1) precluding Isenberg's expert witness from testifying about Dr. Joseph's treatment of the Decedent before March 1, 2016; and (2) instructing the jury that it must find in favor of Isenberg with respect to Dr. Millan, because it was confusing and "gave the jurors the impression that . . . the [trial court] concluded that Dr.

---

[7] The jury attributed 0% of the causal negligence to Dr. Joseph.

[8] As noted above, the jury's verdict was in favor of Isenberg, as it found he was entitled to total damages of $410,000. The jury's verdict was also in favor of Dr. Joseph, as it found he was not negligent. Instead, the verdict was against additional defendant Dr. Millan, who did not participate at trial, as the jury: (1) concluded his negligence was a cause of Decedent's harm; and (2) assessed the amount of damages against him. *See Mazzie v. Lehigh Valley Hosp.-Muhlenberg*, 257 A.3d 80, 87 (Pa. Super. 2021) (setting forth the elements of a medical negligence claim: "(1) a duty owed by the physician to the patient; (2) a breach of that duty; (3) that the breach of duty was the proximate cause of the harm suffered by the patient; and (4) that the damages suffered were a direct result of that harm").

[9] One week after the October 18, 2023 jury verdict, Isenberg's trial counsel filed a motion to withdraw from representation, as well a motion for extension of time to file a post-trial motion. The trial court granted both. Isenberg's new counsel filed a post-trial motion on January 24, 2024 and, following status conferences, an amended motion on June 6, 2024.

Millan and Sharon [Regional Hospital] were negligent while suggesting that Dr. Joseph was not negligent." Amended Post-Sentence [*sic*] Motions, 6/6/24, at unnumbered 2. Isenberg also challenged the weight of the evidence by stating, in sum: "The jury's verdict in favor of [Dr. Joseph] should be set aside because it is against the weight of the evidence and was the product of passion, prejudice, and/or partiality." *Id*. at unnumbered 1.

The trial court denied Isenberg's post-trial motions, finding they "set[] forth boilerplate language" and failed to specify grounds for relief as required by Pa.R.Civ.P. 227.1(b)(2). Trial Court Memorandum Opinion & Order, 8/17/24, at unnumbered 2. On September 3, 2024, Dr. Joseph filed a praecipe for judgment. Isenberg filed a timely notice of appeal and he and the trial court have complied with Pa.R.A.P. 1925. The trial court issued an opinion which addressed Isenberg's evidentiary and jury instruction issues, but continued to find Isenberg has waived his challenge to the weight of the evidence.

Isenberg presents five issues for our review:

1. The trial court committed reversible error by summarily denying [Isenberg's] amended post-trial motions and failing to address the merits of these claims by declaring that [Isenberg's] post-trial motions do not specify any grounds for relief as required by Pa.R.[Civ.]P. 227.1(b).

2. The trial court committed reversible error by denying [Isenberg's] Judgment N.O.V. against Dr. Joseph as the jury verdict was against the weight of the evidence.

3. The trial court committed reversible error when it instructed the jury that they must find judgment in favor of [Isenberg]

and against Dr. . . . . Millan and Sharon [Regional Hospital] because this instruction unintentionally caused confusion, prejudice and/or partiality when rendering judgment on the remaining defendant, Dr. Joseph, as it gave the jurors the impression that that the court considered the evidence and concluded that Dr. Millan and Sharon [Regional Hospital] were negligent while suggesting that Dr. Joseph was not negligent.

4. The trial court committed reversible error in its decision by precluding [Isenberg] from offering evidence relating to Dr. Joseph's continued prescription of pain medication to . . . Decedent for shoulder pain because it prevented [Isenberg] from presenting relevant evidence to the jury concerning Dr. Joseph's misdiagnosis of [D]ecedent's medical condition that ultimately resulted in her death.

5. The trial court committed reversible error when it precluded [Isenberg's] expert from discussing documents and treatment Dr. Joseph provided to . . . Decedent before March 1, 2016, because it prevented [Isenberg] from presenting relevant evidence to the jury concerning Dr. Joseph's knowledge of . . . Decedent's medical conditions and medical history that led to his misdiagnosis of [D]ecedent's medical condition in July of 2016 that ultimately resulted in her death.

Isenberg's Brief at 3-4 (issues reordered and unnecessary capitalization omitted).

In Isenberg's first issue, he avers the trial court erred in finding his post-trial motion failed to specifically identify grounds for relief. We address part of this issue — the trial court's finding that he waived his weight of the evidence challenge — together with Isenberg's second issue — the merits of a weight of the evidence claim. Isenberg maintains that his post-trial motion "properly raised a request for judgment notwithstanding the verdict [("JNOV")] based upon a claim that the verdict was against the weight of the evidence." Isenberg's Brief at 10. On appeal, he cites, *inter alia*, the following

trial evidence in support of his theory that Dr. Joseph was negligent in his care of Decedent: (1) Decedent "received regular treatment from Dr. Joseph before her heart attack;" (2) Decedent was "diagnosed with high blood pressure and Dr. Joseph prescribed her medication to address this medication [*sic*] condition;" and (3) "blood work [showed] that [Decedent] should have been on a statin," but Dr. Joseph failed to prescribe it, and his "failure to treat this condition increased [Decedent's] likelihood of suffering a cardiac condition." *Id*. at 21-22.

"The issue of whether a party's conduct results in waiver of an issue is a question of law; accordingly, our standard of review is *de novo* and our scope of review is plenary." **Shiflett v. Lehigh Valley Health Network, Inc.**, 217 A.3d 225, 232 (Pa. 2019). Pennsylvania Rule of Civil Procedure 227.1(b)(2) provides: "[P]ost-trial relief may not be granted unless the grounds therefor . . . are specified in the motion. . . . Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds." Pa.R.Civ.P. 227.1(b)(2). This Court has noted:

> A boiler[ ]plate motion, either that "the evidence was insufficient to support the verdict," or that "the verdict was against the weight of the evidence," is not a "precise statement of issues and grounds relied upon." Such assignments of error not only do not "foster" but discourage "alert and zealous advocacy," for anyone may make them without giving thought to what the issues really are.
>
> [As such,] a post-verdict motion, either that "the evidence was insufficient to support the verdict," or that "the verdict was against the weight of the evidence," will preserve no issue for appellate review unless the motion goes on to specify *in what respect* the

- 9 -

evidence was insufficient, or **why** the verdict was against the weight of the evidence.

***Brown v. End Zone, Inc.***, 259 A.3d 473, 484 (Pa. Super. 2021) (citations omitted and emphasis in original).

After our independent review of the record, we reach the same conclusion as the trial court: the weight of the evidence claim, in Isenberg's post-trial motion, was boilerplate and failed to specify the grounds for relief. ***See Shiflett***, 217 A.3d at 232.  The amended post-trial motion stated, in sum: "The jury's verdict in favor of [Dr. Joseph] should be set aside because it is against the weight of the evidence and was the product of passion, prejudice, and/or partiality."[10]  Amended Post-Sentence Motions, 6/6/24, at unnumbered 2.  Isenberg failed to refer to any particular evidence or relevant law.  ***See*** Pa.R.Civ.P. 227.1(b)(1)-(2); ***see also Brown***, 259 A.3d at 484. For this same reason, we also hold no relief is due on Isenberg's second issue on appeal — the merits of his weight of the evidence claim.

_____

[10] The initial post-trial motion was similarly vague and lacking in discussion:

> 1  The jury's verdict in favor of [Dr.] Joseph should be set aside because it is against the weight of the evidence and was the production of passion, prejudice, and/or partiality.

> \* \* \* \*

> 5.  [Isenberg] seeks [JNOV] with respect to the jury's verdict in favor of Dr. Joseph and against [Isenberg] as such verdict is against the weight of the evidence.

Post-Trial Motions, 1/24/24, at unnumbered 1, 2.

Next, we consider the sub-claim within Isenberg's first issue — that the trial court erred in finding his post-trial motion failed to raise, with specificity, a challenge to the jury instruction "that [it] must find judgment in favor of [him] and against Dr. . . . Millan and Sharon" Regional Hospital." Isenberg's Brief at 10. Relatedly, we address his third issue on appeal — the merits of this claim. In support, Isenberg contends this instruction was "misleading," and it "suggested to the jury that the trial court had already weighed the evidence and identified the party . . . responsible for [Decedent's] untimely death" — namely Dr. Millan. *Id*. at 17, 18. Isenberg reasons the instruction improperly "gave the jurors the impression that the court had already . . . concluded that Dr. Millan was the responsible party while implying that Dr. Joseph was not liable." *Id*. at 18.

Before we consider whether Isenberg sufficiently articulated this claim in his post-trial motion, however, we must consider whether he preserved it at trial. A plurality of the Pennsylvania Supreme Court has stated:

> [O]ur rules of civil and appellate procedure, and our longstanding principles of preservation and waiver, dictate that, while a jury-charge challenge can be preserved under Pa.R.[Civ.]P. 227.1 by making proposed instructions part of the record and by raising the issue in a post-trial motion, the challenge is waived when the appellant fails to secure a record ruling from the trial court upon the proposed charge. The record in this case is devoid of any such trial court ruling.
>
> In order to preserve a jury-charge challenge for appellate review, a party must either: (1) lodge a contemporaneous objection on the record, Pa.R.A.P. 302; Pa.R.[Civ.]P. 227, 227.1, *cmt.*; or (2) make requested points for charge part of the record pursuant to Pa.R.[Civ.]P. 226(a), obtain an explicit trial court ruling upon the

challenged instruction, **and** raise the issue in a post-trial motion. **See** Pa.R.A.P. 302(a); Pa.R.[Civ.]P. 226(a), 227, 227.1.

**Jones v. Ott**, 191 A.3d 782, 788-89 (Pa. 2018) (OAJC) (some citations omitted and emphasis added). Furthermore, where "an issue is not reviewable on appeal unless raised or preserved below," our Rules of Appellate Procedure require an appellant to specify the place in the proceedings where the issue was raised. Pa.R.A.P. 2117(c) (statement of case section of appellate brief), 2119(e) (argument section). "[I]t is not the responsibility of this Court to scour the record to prove that an appellant has raised an issue before the trial court, thereby preserving it for appellate review." **Schultz v. MMI Prods.**, 30 A.3d 1224, 1230 (Pa. Super. 2011).

Isenberg fails to cite the place in the record where he preserved a challenge to the jury instruction. **See** Pa.R.A.P. 2117(c), 2119(e). Our review of the record does not reveal such an issue preservation. While the certified record on appeal includes both parties' proposed points for charge, Isenberg's filing did not include an objection to the instruction now challenged on appeal. There is no transcript of the charging conference, and thus we cannot determine whether Isenberg objected to the jury instruction at that time. Finally, Isenberg did not object to the jury instruction as given by the trial court. Accordingly, we cannot conclude — and we emphasize that Isenberg does not claim — that he properly preserved this issue before the jury retired to deliberate. **See Jones**, 191 A.3d at 788-89 (OAJC). Thus, on this ground we conclude that Isenberg has waived this claim, and we do not reach the

issues of whether he properly articulated it in his post-trial motion nor whether it is meritorious.

The final sub-claim in Isenberg's first issue is whether his post-trial motion properly preserved a challenge to the trial court's evidentiary ruling regarding Dr. Joseph's pre-March 3, 2016 treatment of Decedent. We note Rule of Civil Procedure 227.1(b), discussed above, refers to Pennsylvania Rule of Evidence 103, which states:

> (a) Preserving a Claim of Error. A party may claim error in a ruling to admit or exclude evidence only:
>
> * * * *
>
> (2) if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.
>
> (b) Not Needing to Renew an Objection or Offer of Proof. Once the court rules definitively on the record — either before or at trial — a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

Pa.R.E. 103(a)(2), (b).

As stated above, at the hearing on Dr. Joseph's motions *in limine*, Isenberg objected to the trial court's initial indication that it would grant Dr. Joseph's requested relief. Under Rule of Evidence 103(b), we determine this contemporaneous objection was sufficient to preserve the issue for appeal, and thus Isenberg's inclusion — or omission — of it from his post-trial motion is not dispositive. **See** Pa.R.E. 103(b). We thus proceed to consider

Isenberg's fourth and fifth issues on appeal — that the trial court erred in entering its evidentiary order.

Isenberg asserts the trial court erred "in precluding[:] **all** evidence and testimony concerning Dr. Joseph's historical treatment of" Decedent, including his prescription of pain medicine; evidence that Decedent "had ongoing complaints that were directly related to her heart condition;" and expert testimony "explaining . . . Dr. Joseph's failure to take precautionary measures to ensure that [Decedent] was not experiencing a cardiac condition." Isenberg's Brief at 11, 13 (emphasis added). Isenberg insists the trial court thus precluded him from presenting "a full picture to the jury" and "relevant evidence that [Decedent] was experiencing heart-related issues well before her heart attack that was misdiagnosed by Dr. Joseph." **Id**. at 11, 12. Furthermore, Isenberg argues the precluded evidence was relevant to the issue of Dr. Joseph's negligence.

"This Court reviews rulings on the admissibility of evidence under an abuse of discretion standard." **Kunkel v. Abington Mem'l Hosp.**, 328 A.3d 1150, 1156 (Pa. Super. 2024). Similarly, "[t]he admissibility of expert testimony is an evidentiary issue that is subject to the discretion of the trial court, and on review, a ruling on that subject will only be reversed to correct an abuse of discretion." **Constantine**, 325 A.3d at 741.

The trial court addressed Isenberg's issue in is Rule 1925(a) opinion. It reasoned:

> The [trial] court only limited [Isenberg] in how they presented evidence. The court order from March 3, 2023, stated that [Isenberg] could not introduce evidence of the prescription for narcotics in order to preclude irrelevant and prejudicial expert opinions. The parties discussed the limitations of this before trial. [**See** N.T. Trial Vol. I, 10/10/23, at 25-28.] The court limited [Isenberg] in the line of questioning so as not to imply the prescription was unnecessary, overprescribed, or that . . . Decedent developed a habit. **Id**. at 26-27. **However, [Isenberg] was free to present evidence of the prescription and discuss any misdiagnosis of . . . Decedent's medical condition.**

Trial Court 1925 Opinion, 11/4/24, at unnumbered 3 (unnecessary capitalization and record citations omitted and emphasis added).

After our review of the record, we determine the trial court did not abuse its discretion in issuing the evidentiary order. **See Kunkel**, 328 A.3d at 1156. Despite the trial court's clear discussion in its Rule 1925(a) opinion, Isenberg ignores it on appeal. Isenberg's broad claim, that the trial court precluded "all" evidence of Dr. Joseph's treatment of Decedent before March 1, 2016, is mistaken. Isenberg's Brief at 11. The pre-trial order did not include such sweeping language. Indeed, although the order precluded evidence that Dr. Joseph prescribed "narcotics" to Decedent, as well as "criticism of the care and treatment rendered prior to March 1, 2016," the order specifically permitted Isenberg to "present expert testimony that Dr. Joseph treated [Decedent] for shoulder pain, that **shoulder pain can be a cardiac condition, and that as of March 1, 2016 Dr. Joseph should have recognized the shoulder pain as a potential cardiac condition**." Order #273, 3/6/23, at 1-2 (emphasis added). The record thus does not support

Isenberg's claims to the contrary. **See** Isenberg's Brief at 11 (arguing he "would have been able to demonstrate . . . that [Decedent] was experiencing heart-related issues well before her heart attack that was misdiagnosed by Dr. Joseph and left untreated," and that the court's ruling "prohibited [his] expert from explaining . . . Dr. Joseph's failure to take precautionary measures to ensure that [Decedent] was not experiencing a cardiac condition"). As the factual premise of Isenberg's claim is belied by the record, we conclude no relief is due on his final two issues.

In sum, we conclude that none of Isenberg's issues merit relief. Accordingly, we affirm the judgment entered in his favor.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

9/16/2025